Rose McDonald, Administratrix, etc., Appellant, *v.* Charles H. Mallory et al., Respondents.

In respect to matters not committed by the Constitution exclusively to the Federal government, or legislated upon by Congress, but which are regulated entirely by State laws, a State to which a vessel belongs can be regarded as the sovereignty whose laws follow her until she comes within the jurisdiction of some other government.

Civil rights of action, therefore, for matters occurring at sea, on board of a vessel belonging to one of the States, must depend upon the laws of that State, unless they arise out of some matter over which jurisdiction has been vested in and exercised by the government of the United States.

*Crapo* v. *King* (45 N. Y., 86), laying down a contrary doctrine, having been reversed by the United States Supreme Court (16 Wal., 610), the decision of that tribunal adopted.

The provisions of the Revised Statutes of this State, defining the boundaries of the State, and declaring that its sovereignty and jurisdiction extend to all places within such boundaries (1 R. S., 62, § 1; id., 65, § 1) were not intended and do not operate as a restriction upon subsequent legislation, or as a renunciation or abrogation of any effect which might, on general principles of law, be given to its statutes on board of vessels on the high seas.

Accordingly, *held,* that under the statute of this State (chap. 450, Laws of 1847, amended by chap. 256, Laws of 1849 and chap. 78, Laws of 1870) giving a right of action for causing death by a wrongful act or neglect, an action was maintainable for causing the death of a citizen of this State on the high seas, on board of a vessel hailing from and registered in a port within the State; the vessel being at the time employed by the owners in their own business, and their negligence having caused the death.

(Argued March 26, 1879; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendants, entered upon an order affirming an order of Special Term, which sustained a demurrer to plaintiff's complaint.

This action was brought by plaintiff as administratrix of Charles McDonald, deceased, to recover damages for his death.

The complaint alleged, in substance, the ownership of the steamer "City of Waco" by the defendants, and its employment as a freight and passenger vessel trading between the city of New York and the city of Galveston, in the State of Texas; that defendants were citizens and residents of the city of New York, and said steamer was registered and belonged in the port of New York; that said Charles McDonald, a citizen of the State of New York, and a resident in the city of Brooklyn, was employed on the steamer as a fireman; that the steamer received on board, at New York,

as freight, on October 30, 1875, to be carried to Galveston, or to be used as stores on the steamer, 300 cases of crude petroleum, in violation of section 4472 of the Revised Statutes of the United States ; that on November 9, 1875, while the said steamer was lying at anchor on the high seas, outside the bar and harbor of Galveston, Texas, a fire started on board of her, and by reason of the presence of said petroleum, which was reached by the fire, the said fire could not be extinguished, and the death of plaintiff's intestate was caused by the violence of said fire, and "by the culpable negligence of said defendants."

The complaint then alleges that "said negligence and death occurred within the territory of the State of New York, to wit : at the city of New York, and on board said steamer belonging to the State of New York, and being at first at the city of New York, and thereafter on the high seas, as above stated."

The defendants demurred to the complaint, on the grounds that it appeared on the face thereof that the court has no jurisdiction of the action; and that the complaint does not state facts sufficient to constitute a cause of action.

*Robert D. Benedict*, for appellant. The receiving of the petroleum on board the defendants' steamer and carrying the same were acts sufficient in themselves to constitute such wrongful act, neglect or default, as would, if death had not ensued, have entitled plaintiff's intestate to maintain an action and recover damages. (U. S. R. S., § 4472; *Jetter* v. *N. Y. and H. R. R. Co.*, 2 Abb. Ct. App. Dec., 458; *Beisigel* v. *N. Y. C. and H. R. R. R. Co.*, 14 Abb. [N. S.], 29; *Blanchard* v. *N. J. R. R. Co.*, 59 N. Y., 296; *Mussoth* v. *D. and H. Can. Co.*, 64 id., 531–535; *Quinn* v. *Moore*, 15 id., 32.) The political jurisdiction of the State of New York, so far as the subject matter of the statute under which this action was brought, extended to defendants' steamer until she was burned. (*Crapo* v. *Kelly*, 16 Wall., 610; *Steamb't Co.* v. *Chase*, 16 id., 522; *Sherlock* v. *Allen*, 93 U. S [3 Otto.], 99.)

There is nothing in the Constitution of the United States or the laws made in pursuance thereof to prevent such operation of the statute in question. (*Steamb't* v. *Chase*, 16 Wall., 522; *Sherlock* v. *Alling*, 93 U. S., 99.) It is never to be assumed, except upon the clearest evidence, that a sovereign State intends, by its own legislation, to renounce a right of territorial domain to which its title is clear and absolute. (*Maher* v. *Norwich and N. Y. Trans. Co.*, 35 N. Y., 354.) This State has exercised jurisdiction over its citizens when on vessels belonging to it on the high seas, or outside of the boundaries laid down in the statute. (Act of March 24, 1758, Van Schack's Laws, 368–369; Act of Dec. 13, 1763, id., 433; Act of April 14, 1784, Jones & V., 124; *Callagan* v. *Hallett*, 1 Cai., 105; *Hoyt* v. *Com's Taxes*, 23 N. Y., 224; 1 R. S., 643, § 1; 644, § 2; 647, § 25.)

*William Allen Butler*, for respondents. The statute under which this action was brought does not give a right of action in this State to recover for injuries committed without the territorial limits of the State, and resulting in death. (Laws 1847, chap. 450; Laws 1849, chap. 256; Laws 1870, chap. 78; *Whitford* v. *Panama R. R. Co.*, 23 N. Y., 465; S. C., 3 Bosw., 67; *Crowley* v. *Panama R. R. Co.*, 30 Barb., 99; *Beach* v. *Bay St. S. Co.*, id., 433; *Vandeventer* v. *N. Y. and N. H. R. R. Co.*, 27 id., 244; S. C., 6 Abb. Pr., 239; *Mahler* v. *Trans. Co.*, 35 N. Y., 352, 353; *Kelly* v. *Crapo*, 55 N. Y., 86.) This State has never exercised or claimed to exercise jurisdiction beyond its boundaries so as to give an extra territorial effect to a local statute, such as the one in question here. (*Kelly* v. *Crapo*, 45 N. Y., 86; *McKeon* v. *Delancy*, 5 Cr., 22; *Suydam* v. *Williamson*, 24 How., 427.) The shipment of the petroleum cannot be made the ground of any claim in this statutory action, or relieve the case of the fatal defect of want of jurisdiction. (*Bradley* v. *Mut. Ben. L. I. Co.*, 45 N. Y., 422; *Butler* v. *Kent*, 19 J. R., 228; *Hoey* v. *Felton*, 11 C. B. [N. S.], 142; *Cox* v. *Burbridge*, 13 id., 430; *Clark* v. *Brown*, 18 Wend., 229; Add. on Torts [3d ed.], 5.)

Rapallo, J.   For the purposes of .this appeal the wrongful act or neglect causing the death of the plaintiff's intestate must be treated as having been committed upon the high seas.   The complaint does not specifically allege that the disaster was caused by the unlawful or negligent lading of the petroleum on board of the vessel in the port of New York, and consequently the question whether that fact, if alleged, would establish that the wrong complained of was committed within the territorial bounds of this State, need not be considered.

We shall therefore come directly to the principal point argued, which is, whether under the statute of this State, which gives a right of action for causing death by wrongful act or neglect, an action can be maintained for thus causing a death on the high seas, on board of a vessel hailing from and registered in a port within this State and owned by citizens thereof; the person whose death was so caused being also a citizen of this State, the vessel being at the time employed by the owners in their own business, and their negligence being alleged to have caused the death.

It is settled by the adjudications of our own courts that the right of action for causing death by negligence exists only by virtue of the statute, and that where the wrong is committed within a foreign State or country, no action therefor can be maintained here, at least without proof of the existence of a similar statute in the place where the wrong was committed. ( *Whitford* v. *Panama R. R. Co.*, 23 N. Y., 465; *Crowley* v. *Panama R. R. Co.*, 30 Barb., 99; *Beach* v. *Bay State Steamboat Co.*, 30 id., 433; *Vandeventer* v. *N. Y. and New Haven R. R. Co.*, 27 id., 244.) These decisions rest upon the plain ground that our statute can have no operation within a foreign jurisdiction, and that with respect 'to positive statute law it cannot be presumed that the laws of other States or countries are similar to our own.   (Opinion of Denio, J., 23 N. Y., 467, 468, 471.) The liability of a person for his acts depends, in general, upon the laws of the place where the acts were committed,

and although a civil right of action acquired, or liability incurred, in one State or country for a personal injury may be enforced in another to which the parties may remove or where they be found, yet the right or liability must exist under the laws of the place where the act was done. Actions for injuries to the person committed abroad are sustained without proof in the first instance of the *lex loci*, upon the presumption that the right to compensation for such injuries is recognized by the laws of all countries. But this presumption cannot apply where the wrong complained of is not one of those thus universally recognized as a ground of action, but is one for which redress is given only by statute.

Keeping these principles in view it is clear that in order to maintain this action it is necessary to establish that the statute law in question was operative on board of the vessel upon which the injury was committed. In all the cases which have been decided, the place of the injury was actually within the limits of a foreign territory, subject to its own laws, and where there could be no claim that the laws of this State or country were operative. In the present case the *locus in quo* was not within the actual territorial limits of any State or nation, nor was it subject to the laws of any government, unless the rule which exists from necessity is applied, that every vessel on the high seas is constructively a part of the territory of the nation to which she belongs, and its laws are operative on board of her. In this respect the case is new.

There can be no question that if this case were one arising under the laws of the United States the rule referred to would apply, and acts done on board of her while on the high seas, would be governed by those laws. The question now presented is whether in respect to matters not committed by the Constitution exclusively to the Federal government nor legislated upon by Congress, but regulated entirely by State laws, the State to which the vessel belongs can be regarded as the sovereignty whose laws follow her until she comes within the jurisdiction of some other government.

This precise question arose in the case of *Kelly* v. *Crapo* (45 N. Y., 86; and 16 Wall., 610), though in a different form. The question there was whether a vessel upon the high seas was subject to the insolvent laws of the State of Massachusetts, to which State the vessel belonged, that is, where she was registered and her owner resided, so that by operation of those laws, and without any act of the owner, the title to the vessel could be transferred while she was at sea by a proceeding *in invitum*, to an official assignee, and his title thus acquired would take precedence of an attachment levied upon her in the State of New York after she had come within this State.

It was conceded in that case, in this court as well as in the Supreme Court of the United States, that unless the vessel was actually or constructively within the jurisdiction of the State of Massachusetts her insolvent law could not operate upon her so as to defeat a title acquired under the laws of the State within whose actual territorial jurisdiction she afterwards came. (16 Wall., 622.) But in support of the title of the assignee in insolvency it was urged that the rule before referred to applied to her, and that while at sea she was constructively a part of the territory of the State of Massachusetts and subject to her laws.

This court held that the rule invoked was not applicable to a State, and State laws, but that the jurisdiction referred to was vested in the government of the United States, and that the national territory and its laws, only were extended by legal fiction to vessels at sea.

This decision was reversed by the Supreme Court of the United States (*Crapo* v. *Kelly*, 16 Wall., 610), and as we understand the prevailing opinion in that court, it holds that the relations of a State to the Union do no affect its *status* as a sovereign, except with respect to those powers and attributes of sovereignty which have by the Constitution been transferred to the government of the United States, and that in all other respects it stands as if it were an independent sovereign State, unconnected with the other States of the

Union.    Upon this principle it was held that the vessel while at sea was constructively part of the territory of the State of Massachusetts and subject to its laws.    (16 Wall., 623, 624, 631–632.)    It is difficult to conceive any other princi-ple upon which that conclusion could have been reached.

In respect to crimes committed on the high seas, the power to provide for their punishment has been delegated to the Federal government and for that reason State laws cannot be applicable to them ; but I cannot escape the con-clusion that under the principle of the case of *Crapo* v. *Kelly* civil rights of action, for matters occurring at sea on board of a vessel belonging to one of the States of the Union must depend upon the laws of that State, unless they arise out of some matter over which jurisdiction has been vested in and exercised by the government of the United States, or over which the State has transferred its rights of sovereignty to the United States ; and that to this extent the vessel must be regarded as part of the territory of the State, while in respect to her relations with foreign governments, crimes committed on board of her, and all other matters over which jurisdiction is vested in the Federal government, she must be regarded as part of the territory of the United States and subject to the laws thereof.

The facts alleged in the complaint, and admitted by the demurrer, present a strong case for the application of the rule that the laws of the State to which the vessel belongs follow her until she comes within some other jurisdiction. The defendants, by whom the wrong is alleged to have been committed, were, at all times up to its final consummation by the death of the plaintiff's intestate, citizens and residents of this State, and subject to its laws, and the deceased was also a citizen of this State.    The death was caused either by the illegal and negligent act done in this State of lading the dangerous and prohibited article on board the vessel and sending the deceased to sea in her thus exposed, or by the negligence or wrongful acts of the defendants committed at sea through their agents.    The complaint does not distinctly

specify which, but it must have been one or the other. If the latter, then at the place where the injury was consummated there was no law by which to determine whether or not it rendered the defendants liable to an action, unless the law of the State to which the vessel belonged followed her. In the present case the defendants were, at the time of the wrongful act or neglect, and of the injury, within this State and subject to its laws, and none of the objections, suggested in the various cases which have been cited, to subjecting them to liability under the statute, for acts done out of the territory of the State, can apply. There can be no double liability, as suggested by DENIO, J., in 23 N. Y., 467, 471, for the *locus in quo* was not subject to the laws of any other country; nor can it be said that the deceased or his representatives were under the protection of the laws of any other government, as is said in some of the other cases cited. It is a case where no confusion or injustice can result from the application of the principle declared by the Supreme Court, that the laws of the State as well as of the United States, enacted within their respective spheres, follow the vessel when on the high seas. In the opinion of the court at General Term in this case it is expressly conceded that both the laws of the State and the nation have dominion on a vessel on the high seas, but the demurrer was sustained on the ground that this right of jurisdiction has not been exercised by the State of New York, and its statutes are restricted in their operation to the actual territorial bounds of the State.

No such restriction is contained in the statute now under consideration. Its language is broad and general and by its terms it operates in all places. Its operation on cases arising in other States and countries has not been denied by reason of anything contained in the act itself or in any other legislative act, but on general principles of law.

But the court rests its conclusion upon the act of the Legislature of this State which defines its boundaries and declares that the sovereignty and jurisdiction of this State

extends to all the places within the boundaries so declared (1 R. S., 62, 65), and it construes that act as a renunciation or abrogation of any effect which might on general principles of law be given to its statutes on board of vessels on the high seas.

We are unable to concur in this view. The act referred to was intended to define simply the actual territorial bounds of the State, and the declaration that its sovereignty and jurisdiction should extend to all places within those bounds was not intended to nor could it operate as a restriction upon subsequent legislation, nor had it any reference to such a question as that now before us. Whatever operation our laws may have on board of vessels at sea depends upon general principles and there is nothing in the legislation of our State which places it in this respect on a different footing from any other. It is not claimed that the sovereignty and jurisdiction of this State extend to its vessels when at sea, as they do to places within its boundaries, for all purposes, such as service of process, the execution of judgments and the like, but only that when acts done at sea become the subject of adjudication here, the rights and liabilities of parties may in some cases be determined with reference to our statutes. There is nothing inconsistent with this in the act referred to, or in the assertion of sovereignty and jurisdiction for all purposes over places within the bounds of the State.

The decision of this court in *Kelly* v. *Crapo* is referred to as the highest evidence that this State never intended that its laws should extend to vessels on the high seas. That decision recognized the general principle that the laws of a nation do so extend, but was based upon the theory that the relation of the State to the Union was such that this attribute of sovereignty had become merged in the powers granted to the general government. But the judgment of the Supreme Court of the United States having established the contrary view, and that in matters not the subject of Federal legislation, the laws of the State follow the vessel, thus making the laws of the State and of the United States, in their respective spheres, together constitute the law of the

nation to which the vessel belongs, we adopt that decision as the judgment of the tribunal to whom the ultimate determination of questions of that nature properly belongs.

There is nothing in the nature of this action which renders it exclusively the subject of Federal cognizance. The jurisdiction of the States and of the United States in the matter of personal torts committed at sea such as assaults by a master on his crew, injuries to passengers, and the like, are concurrent, though remedies by proceedings *in rem* can be administered only by the courts of admiralty of the United States. The field of legislation in respect to cases like the present one has not been occupied by the general government and is therefore open to the States. (*Steamboat Co.* v. *Chase,* 16 Wall., 522, 530, 533.) Indeed the United States Court of Admiralty would have no jurisdiction in such a case (*Steamboat Co.* v. *Chase,* 16 Wall., 522, 530, 533; *Sherlock* v. *Allen,* 93 U. S., 99), and there is no greater objection to extending the operation of a statute of this description to a vessel at sea than there was to giving similar operation to a State insolvent law.

The judgment of the court below should be reversed, and judgment rendered for the plaintiff on the demurrer, with leave to the defendants to answer on payment of costs within thirty days.

All concur, except Andrews, J., absent.

Judgment accordingly.