# HIDDE BAKKER, *et al. vs.* THE "SUSIE M. PLUMMER."

## July 22, 1904.

*Liability of Vessels for Injuries Causing Death Under Code of California:* Section 813— Code of Civil Procedure of California, making vessels liable in damages for injuries caused by them, to persons and property in that State, does not make them liable to the personal representatives of such persons for injuries causing death.

*Jurisdiction of a State of the Union Over Its Vessels on the High Seas:* A vessel of a citizen of a State of the Federal Union and enrolled therein, is, when on the high seas, the territory of such State, as to questions arising under the State laws which do not conflict with the civil and maritime authority of the United States.

*Negligence.—Hidden Defect of Gear.—Safe Place to Work:* The fact that a defective condition of a wire rope is not noticeable from an outside inspection, is no defense to a libel for damages on the ground of negilgence, it being the duty of the employers to provide employes with a reasonably safe place in which to work.

*Suit for Damages for Death.—Proof of Damages:* The fact that the right to sue for damages is given to the personal representative of a person who loses his life by the negligence or wrongful act of another by Sec. 377—Code of Civil Procedure of California, does not relieve them from the necessity of proving pecuniary damages by reason of such death.

*Nominal Damages:* Nominal damages not allowed in admiralty for personal torts.

In Admiralty: Libel *in rem* and *personam* for damages for death of a person caused by negligence.

J. J. Dunne, Proctor for Libellants.

Robertson & Wilder, Proctors for Libellees.

DOLE, J. This is a libel *in rem* and in *personam* against the American schooner "Susie M. Plummer" and her master and owners,—citizens and residents of the State of California, brought under Section 377 of the Code of Civil Procedure of the State of California, which is as follows:

"Section 377. When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just;" and Section 813 of such Code. The part of this section relied on is as follows:

"All steamers, vessels and boats are liable * * *. 6. For injuries committed both to persons or property in this State.

"Demands for these several causes constitute liens upon all steamers, vessels and boats and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of one year from the time the cause of action accrued."

There is very little dispute about the facts except as to such allegations which relate directly to the charge of negligence on the part of respondent. It appears that the "Susie M. Plummer" is enrolled and owned in the port of San Francisco, in the State of California; that on or about the 24th day of September, 1902, she sailed from San Francisco for Gray's Harbor in the State of Washington to load lumber for a foreign voyage to the

port of Iquique in Chili, South America, and while at Gray's Harbor there was issued to her from the office of the Collector of Customs in Port Townsend of said State of Washington, a temporary register authorizing her to proceed upon such foreign voyage. Before the vessel sailed from San Francisco, one Douwe Bakker shipped on board of her as able seaman at wages at the rate of forty dollars a month until the loading of said schooner at Gray's Harbor should be completed and thereafter at the rate of twenty-five dollars a month until the termination of said voyage; that on or about the 26th day of November, at nine o'clock in the morning, the said schooner sailed on said voyage and at ten o'clock had proceeded beyond the breakwater at the entrance of the harbor and had passed out upon the high seas. That during the afternoon of the same day when the schooner was ten miles from the land, more or less, the said Douwe Bakker was ordered out on the jib-boom to help stow the outer jib which had been lowered. In proceeding along the jib-boom in obedience to this order, the foot-rope upon which he was walking broke, in consequence of which he fell into the sea and the schooner, being under headway, immediately passed him. There was no life-buoy at hand which might have been thrown to him as the vessel passed to leeward of him; the schooner did not lower a boat to go to his assistance from the fact that the weather was stormy and there was some risk in so doing and from the further fact that a boat's crew taken from the ship's crew would have left the schooner insufficiently manned. Nothing more was seen of Douwe Bakker after the vessel passed him.

Two of the owners of the schooner, J. F. Clark and R. G. Byxbee by H. C. Lund her master, filed a claim praying to be allowed to defend the suit. The master, H. C. Lund, filed a plea to the jurisdiction: the said owners above named also filed a plea to the jurisdiction alleging that the said libel being a proceeding *in rem* against said schooner, the court had no jurisdiction in *personam* against them and generally, which was the plea of the master, that the allegations of the libel did not constitute any cause of action against the libellees cognizable in a

court of admiralty and because the court had no jurisdiction of or over the matters alleged in the libel. Afterward, on the 18th day of May, 1904, the master as intervenor for his interest and the interests of said Clark and Byxbee, filed his answer. The libellants filed an amended libel and it was agreed between the parties that the answer filed and the plea as to jurisdiction should all relate to such amended libel as to the original libel. Evidence was taken by deposition and the case was finally submitted upon briefs.

The libellees, by their counsel, contended that the libel should be dismissed because, first, the facts alleged in the libel constitute no cause of action in admiralty either in *personam* or *in rem;* second, that if any cause of action is alleged, the joinder of the claim in *personam* and *in rem* constitutes a vital defect; third, the libellants being aliens cannot maintain any claim for damages for the death of a relative under the statutes of this country; fourth, the alleged negligence has not been proven; fifth, if a case demanding relief has been alleged and proven the libellants cannot recover more than nominal damages.

I find in the first place that the libel in proceeding against the schooner *in rem* was improperly brought because the 813th Section of the Code of Civil Procedure of California which makes vessels liable for injuries committed by them on persons or property in the State and makes demands for damages therefor, liens thereon, does not apply to the provisions set forth in Section 377 of the said Code whereby a person causing the death of another wrongfully is liable to his heirs or personal representatives in damages. This question came up in connection with the statutes of Louisiana and the Supreme Court of the United States said:

"The object of Article 3237 (which corresponds to Section 813 of the California Statute), was not to extend the cases in which damages might be recovered to such as resulted in death, but merely to provide that, in cases of damages to person or property where such damage was occasioned by negligence in the management of any water craft, the party injured should

have a privilege or lien upon such craft. We deem it entirely clear that the article was not intended to apply to cases brought by the representatives of a deceased person for damages resulting in death."

This case *The Albert Dumois,* 177 U. S. 240, 259, was decided in 1899 and was supported by *The Onoko,* 107 Fed. Rep., 984 (1901), and *The Dauntless,* 129 Fed. Rep., 715 (1904). *The Dauntless* is a case under the laws of California, the same laws under which the present case was brought. The court said:

"We are of opinion that no substantial difference can be drawn between the statutes of the different States upon which The Albert Dumois and The Onoko were based and the statutes under consideration," the former being under Louisiana Statutes and the latter under Illinois statutes. Reference to these statutes shows that they were substantially the same as the California statutes. It is therefore clear that under these decisions, no lien being created against a vessel under the circumstances of this case, there is no basis for proceedings *in rem.*

The accident by which Douwe Bakker lost his life having taken place, so far as appears by the evidence, beyond the limits of the State extending one league from the shore, the question whether the jurisdiction of the State laws of California and Washington or either of them extend beyond these limits, becomes a vital one to this case. There have been conflicting decisions on this question, but the law appears to be established, that a vessel belonging to citizens of one of the United States and enrolled therein, is, when on the high seas, the territory of the State to which it belongs, so far as questions arising under the laws of such State, and which do not conflict with the civil and maritime authority of the United States, are concerned. *Crapo v. Kelly,* 83 U. S. 610; *McDonald v. Mallory,* 77 N. Y. 546; *The Jane Grey,* 95 Fed. Rep., 693; *The Chinese Cabin Waiter,* 13 Fed. Rep., 286; *In re Moncan,* 14 Fed. Rep., 44; *International Nav. Co. v. Lindstrom,* 123 Fed. Rep., 475; *Wilson v. McNamee,* 102 U. S. 572.

I find, therefore, that the laws of the State of California giving the right of actions in tort to the next of kin for the wrongful death of a relative, were in force on board the "Susie M. Plummer" at the time Douwe Bakker lost his life, the remedy being in this court in *personam* only.

There is no doubt in my mind as to the responsibility of the owners for the death of Douwe Bakker; it was not caused by any negligence of his fellow servants except as to the possibility that he might have been saved if a boat had been lowered, but the master gave no orders for that. The primary cause of the accident was the defective condition of the foot-rope upon which the deceased had to walk in obeying the command of his superior officer and this defective condition was and could have been due to nothing else than the negligence of the owners and their agents. After examination of this foot-rope, which was made of wire and coated or "served" as the sailors say, with tarred rope, the wire strands were found to be rusty, and as the evidence is, rotten, the foot-rope on the other side, tested with the capstan, was easily broken and was found to be in the same condition. The evidence of the ship's officers is that the ship had been overhauled about two years before the accident and there is no evidence that these foot-ropes which were along the jib-boom and exposed to the salt water more perhaps than any other part of the standing rigging, were examined or tested since that time. The condition itself of the foot-ropes shows negligence, as under reasonable vigilance they would have been replaced long before the time of the accident. The fact that the condition of the wire rope was not noticeable from an outside inspection on account of the tarred rope with which it was covered, is no defense, for it was the duty of the owners to exercise reasonable care and diligence in providing the sailors of the "Susie M. Plummer" with a reasonably safe place in which to work and failing to do so they are liable for the damages resulting from such neglect, should any be shown. *Atchison Topeka, &c. R. R. v. Moore,* 29 Kan.

632; *Ballimore & Ohio R. R. Co. v. Baugh,* 149 U. S. 368; *N. E. R. R. v. Conroy,* 175 U. S. 328; *The Osceola,* 189 U. S. 175.

The matter of damages is a very difficult one. There is no evidence upon which the court can base an estimate of the pecuniary damage to the brothers and sisters of the deceased, and no other damages can be considered. The whole evidence relating to this subject is substantially as follows: page 39 of the depositions, Hidde Bakker, a brother of the deceased, was asked, "Do you know whether your brother, Douwe Bakker, "contributed anything to the support or assistance of his "brothers or sisters in the way of money? A. Yes, sir." He further testified that their parents were dead and deceased was unmarried. Under the cross-examination, page 49: "Q. Did "you say that he was contributing to the support of your "brothers and sisters? (No answer). Q. Did he give them "money? A. He always gave my sisters money. Q. Did he "ever give you any money? A. No. Q. Any of your other "brothers? A. He gave money to my sisters. Q. Your mar-"ried sister? A. Yes. Q. That's the only sister you have? "A. I have five sisters. Q. All these names that are given "here in this list, some of them are sisters and some of them "brothers? A. Two brothers and five sisters. Q. He gave "all your sisters money, or some of them? A. All sisters. Q. "How much did he give them? A. I could not say about that, "I don't know. Q. You have no idea? A. No. Q. None "of your brothers and sisters depended upon your brother for "support, did they? A. All the sisters need money once in a "while these hard times. Q. And your sisters? A. They are "all servant girls."

In the case of *In re California Nav. & Imp. Co.,* 110 Fed. Rep., 670, 677, the court, after awarding damages to several claimants, who held the position of administratrix to certain persons who lost their lives in consequence of a boiler explosion on defendant's ship, said:

"The administrator of the estate of John T. Tulan is not entitled to recover, as the evidence will not warrant the court in finding that his brothers and sisters, who are his only heirs, have suffered any pecuniary loss by reason of his death. The case of *Burke v. Railroad Co.,* 125 Cal., 264, was an action brought by a sister and two brothers of one Burke to recover damages for his death, which was alleged to have been caused by the negligence of the defendant therein; and in construing the section of the statute above quoted the Supreme Court of California held that in an action brought by collateral heirs of a deceased person to recover damages on account of his death the mere fact that they are such heirs does not tend to show pecuniary damage, and, in the absence of other proof tending to show actual damages, or at least probable loss, resulting to them from his death, the recovery must be limited to nominal damages. The court in that case said: 'It is said the fact that a 'right to sue is given implies that damages may be recovered 'although no rights of plaintiff have been violated. Confessedly, 'plantiffs had no legal claim on deceased for anything, and he 'owed no duty to them to accumulate an estate and leave it to 'them. * * *. The majority of men die without much 'property. Whether the deceased would have succeeded in 'accumulating, and, if he had been successful, would have left 'it to plaintiffs, is matter of pure speculation. Such a guess 'as to probabilities is not, according to settled rules and 'maxims of the law, proper ground for the award of damages.'

"So here there is no evidence tending to show that Capt. Tulan was in the habit of saving his wages, or that his brothers and sisters had any reasonable expectation that he would ever give or leave them, or any of them, anything of value. In this state of the evidence the administrator of his estate would be entitled to recover nominal damages if the action was in a court of law, but in courts of admiralty nominal damages for personal torts are not awarded."

This case, as far as it relates to claims for the death of John

T. Tulan, is very similar to the one before the court. Here there is no evidence tending to show that Douwe Bakker "was in "the habit of saving his wages or that his brothers or sisters had "any reasonable expectation that he would ever give or leave "them or any of them anything of value." There was nothing showing that any one of these brothers and sisters was unable to support himself or herself and was depending on Douwe Bakker for support. Hidde Bakker was unable to give any definite evidence on the subject, he could only say that the deceased gave his sisters money, he could not say how much, he had no idea, he could only say that all sisters need money once in a while these hard times.

As far as the evidence goes the court cannot find that Douwe Bakker did or was accustomed to do anything definite or regular toward the assistance of his sisters. There is no evidence of the amount of any payment or the number of payments or that any of his sisters depended on him for a support or part of a support, or of any understanding on the subject or promise of assistance. The libellants would be entitled to nominal damages under the circumstances in a court of law, but such damages are not given in admiralty for personal torts.

A decree may be entered in favor of the respondents with costs to be divided between the parties.