PER CURIAM. We think the situation disclosed presented a question of fact for the jury as to the negligence of the defendant in failing to inspect and strengthen the floor which gave way, as well as the contributory negligence of the plaintiff, and whether or not Thorp was acting as superintendent.

[1] It is unimportant whether the plaintiff was working after hours or not.

[2] No error was committed in refusing to permit the carpenter who made the repairs to state the conversation which he had with the owner of the building. He was permitted to say that he repaired it at the request of the owner, and to tell all that he did, and that the owner informed him that the building was to be used for heavy storage. The most favorable answer which the witness could have given to the defendant would have been to say that the owner told the carpenter to fix the floor so that it could not give way. Under the situation disclosed, such instructions would not have exonerated the defendant from an inspection to determine whether those instructions had been carried out.

[3] Nor was there any error in permitting the physician, Dr. Hall, to testify, as he asserted he was entirely able to do, that the plaintiff was suffering from one of two diseases which might have been caused by the accident to the plaintiff. Quinn v. O'Keefe, 9 App. Div. 68, 41 N. Y. Supp. 116. Besides, the verdict, as finally reduced by the trial court to $1,250, can be very properly considered not to embrace damages for the more serious disease which the physician mentioned.

The judgment and order should be affirmed, with costs.

---

STORRS et al. v. NORTHERN PAC. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

1. MASTER AND SERVANT (§ 86*)—DEATH OF EMPLOYÉ—EMPLOYER'S LIABILITY
—LAW GOVERNING.

An employer's liability for death of an employé is governed by the law of the state where the accident occurred.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 137; Dec. Dig. § 86.*]

2. STATUTES (§ 289*)—STATUTE OF SISTER STATE—PROOF.

Statutes of a sister state must be proved like other facts making out a cause of action.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 389, 390; Dec. Dig. § 289.*]

3. PLEADING (§ 237*)—COMPLAINT—AMENDMENT.

If a statute of another state affected plaintiff's right to maintain the suit, the trial court should have permitted any amendment of the pleadings necessary to allow the statute to be put in evidence.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 237.*]

4. DEATH (§ 9*)—DEATH OF EMPLOYÉ—RIGHT OF ACTION—STATUTES.

Code Civ. Proc. Mont. 1895, § 579 (Rev. Codes, § 6486), giving personal representatives a right of action for negligent death, Laws Mont. 1903, c. 83, making railroad companies liable for negligence of certain co-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

employés, and Laws Mont. 1905, c. 1, making such companies liable for negligence of all coemployés, and providing for a survival of a right of action in case of death, are not inconsistent, as affecting the right of heirs to recover for the death of a railroad conductor caused by negligence of a coemployé.

[Ed. Note.—For other cases, see Death, Dec. Dig. § 9.*]

5. APPEAL AND ERROR (§ 1056*)—REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Defendant was not prejudiced by exclusion of a statute with which the jury had nothing to do; its effect being a matter of law for decision by the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1056.*]

6. MASTER AND SERVANT (§ 278*)—DEATH OF CONDUCTOR—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against a railway company for death of a conductor killed in a rear-end collision of trains, evidence *held* to warrant a finding of negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

7. MASTER AND SERVANT (§ 289*)—DEATH OF CONDUCTOR—JURY QUESTIONS—CONTRIBUTORY NEGLIGENCE.

Whether a railway conductor, killed in a rear-end collision of trains, was guilty of contributory negligence, *held*, under the evidence, a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

8. DEATH (§ 99*)—DAMAGES—EXCESSIVENESS.

Recovery in excess of $5,000 by heirs for death of an unmarried railway conductor, 47 years old, should be reduced to that amount as being excessive, where he earned only $150 a month, and had only seen his relatives twice in 22 years, and sent them but little money.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

9. COSTS (§ 164*)—EXTRA ALLOWANCE—PROPRIETY.

An extra allowance of costs in an action for negligent death of a railway conductor was improper where the case was not difficult and extraordinary.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*]

McLennan, P J., dissenting.

Appeal from Trial Term, Clinton County.

Action by George Storrs and others against the Northern Pacific Railway Company. From a judgment for plaintiffs, from an order denying a new trial, and from an order allowing extra costs, defendant appeals. Modified and affirmed conditionally.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Louis E. Carr, for appellant.

Weeds, Conway & Cotter and Frank E. Smith, for respondents.

WILLIAMS, J. The judgment and order should be reversed and a new trial granted, with costs to appellant to abide event, unless the plaintiffs stipulate to reduce the verdict to the sum of $5,000 as of the date of the rendition thereof, in which event the judgment should

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be modified accordingly, and, as modified, affirmed without costs, and the order granting an extra allowance of costs should be reversed without costs, and amount thereof stricken from the judgment.

The action was for negligently causing a death, and was brought by the heirs of the deceased. The accident occurred between 2 and 3 o'clock in the morning of January 2, 1907, at Cold Spur station, in the state of Montana. The deceased was a freight conductor. On the night in question he had charge of an extra freight train going east. It was stopped at Cold·Spur, a signal station, because the block signal was against it—the block to the east was not clear. The road was a single track one, and the train stood on the main track between the two switches, at the ends of the siding. The next signal station east was Livingston. The next one to the west was Hoppers, 4½ miles from Cold Spur, and there was a 2 per cent. downgrade from Hoppers to Cold Spur. The extra freight was made up of 13 cars, a dead engine, its own engine, and a caboose. In the caboose, as the train stood at Cold Spur, were the conductor, a brakeman, and the engineer and fireman of the dead engine. Two other engines had been pushing trains up the grade beyond Hoppers, and were coupled together, and started down towards Cold·Spur. When they passed Hoppers, the signal there, by mistake, showed a clear block to Cold Spur. After the engines passed by, the operator at Hoppers, having discovered the mistake, notified the operator at Cold Spur that they were in the block on their way down towards Cold Spur. The caboose was 600 to 700 feet inside that block. The operator at Cold Spur was unable to clear the block east of Cold Spur, so the extra freight could proceed on its way, and did not succeed until just before the accident occurred, and too late for the train to get out of the block. Upon getting the notice from the operator at Hoppers, the operator at Cold Spur at once went to the caboose, and notified the men therein that the light engines were coming. The brakeman took a white light and a fusee, and went back a few car lengths. The conductor told him not to flag the engines, but to light a fusee, and throw it out of the caboose, and that would be sufficient. There were 6 or 7 minutes before the accident, and time enough for the brakeman to have gone back 15 or 20 car lengths if he had hurried. The engines were running 15 miles an hour, and, when they saw the lights of the caboose and the fusee, they tried to stop, but could not because running so fast, and by reason of the brake on one of the engines being out of order. They struck the caboose and wrecked it, with five or six cars, and the conductor was killed.

[1] The accident having occurred in Montana, the law of that state governed as to the liability of the defendant. McDonald v. Mallary, 77 N. Y. 546–550–551, 33 Am. Rep. 664; Wooden v. Railroad Co., 126 N. Y. 10–14, 15, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803.

[2] The statute law of a foreign state is a fact to be proved like other facts going to make out a cause of action. Pratt v. Roman Catholic Orphan Asylum, 20 App. Div. 352–354, 46 N. Y. Supp. 1035, affirmed 166 N. Y. 593, 59 N. E. 1120.

[3–5] Three statutes of Montana were referred to on the trial. First. Section 579 of the Code of Civil Procedure (section 6486 of the General Statutes), viz.:

"When a representative may sue for the death of one caused by the wrongful act of another. When the death of one person, not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action of damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given, as under all the circumstances may be just."

Second. Chapter 83, Laws 1903, viz.:

"An act to determine the liability of the employers in this state for damages to employés.

"Section 1. Every railway corporation, including electric railway corporations, doing business in this state shall be liable for all damages sustained by an employé thereof within this state, without contributing negligence on his part, when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, master mechanic, yardmaster, conductor, engineer, motorman or any other employé who has superintendence of any stationary or hand signal. * * *

"Sec. 3. No contract of insurance relief or benefit or indemnity in case of injury or death nor any other contract entered into, either before or after the injury, between the person injured and any of the employés named in this act, shall constitute any bar or defense to any cause of action brought under the provisions of this act. * * *"

Third. Chapter 1, Laws 1905, viz.:

"An act to determine the liability of persons or corporations operating railways or railroads within this state, for damages sustained by employés thereof and to declare void contracts restricting such liability.

"Section 1. Every person or corporation operating a railway or railroad in this state shall be liable for all damages sustained by any employé of such person or corporation in consequence of the neglect of any other employé or employés thereof, or by the mismanagement of any other employé or employés thereof, and in consequence of the willful wrongs, whether of commission or omission of any other employé or employés thereof, when such neglect, mismanagement or wrongs, are in any manner connected with the use and operation of any railway or railroad on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding.

"Sec. 2. In case of the death of any such employé in consequence of any injury or damage so sustained, the right of action shall survive, and may be prosecuted and maintained by heirs or personal representatives.

"Sec. 3. All acts and parts of acts in conflict with this act, are hereby repealed. * * *"

Section 579 of the Code of Civil Procedure had been passed before, and was in force at the time of the passage of the acts of 1903 and 1905. The Code provision and the act of 1903 were put in evidence on the trial, but the act of 1905 was excluded under plaintiffs' objection. While this ruling was based upon the form of the pleadings, yet, if the act could be held to deprive the plaintiffs of the right to recover in the action, the court should have permitted any amendment of the pleadings necessary to allow the act to be put in evidence, and the defendant to have the benefit of it. No recovery should have been allowed, not permitted under the laws of Montana as they existed at the time of the accident, 1907. We must therefore consider and

pass upon the construction and effect of these three statutes above quoted. Prior to the passage of the Code provision, an action could not be maintained by the representative of the injured person in case of his death. The Code provision authorized an action by such representatives, and provided generally for the recovery of such damages as under the circumstances should be just. The negligent acts were still governed by the rules of the common law, and the provision was not confined to any particular defendant, person, or corporation. Then the act of 1903 was confined to defendants that were railroad corporations doing business in the state, and provided, in brief, that such defendants should be liable for all damages sustained by an employé by reason of the negligence of certain coemployés of plaintiffs, among them telegraph operators, engineers, and persons having superintendence of stationary or hand signals, the plaintiffs being free from contributory negligence, and that no other contract with defendant should bar an action under this act. This act did not in express terms confine the right of action to the person injured, and apparently it would apply to the representatives of a person whose death resulted from the negligent acts complained of. Then the act of 1905 was also confined to defendants that (persons or corporations) were operating railroads in the state, and provided, in brief, that such defendants should be liable for all damages sustained by an employé by reason of the negligence or mismanagement or willful wrongs generally of any other employés when such negligence, etc., were in any manner connected with the use or operation of such railroads, and contracts restricting such liability should not be legal or binding, and, in case the death of such employé resulted, the right of action should survive and might be prosecuted and maintained by the heirs and personal representatives, and that all acts and parts of acts conflicting should be repealed.

Looking at these acts all together, I am unable to see why they should not stand together, or why any of them should be regarded as conflicting, and therefore repealed.

The first one gave personal representatives a right of action, but still left negligence of coemployés a defense. The act of 1903 provided liability for the negligence of certain coemployés named. The act of 1905 provided liability for negligence generally of all coemployés, and then provided for a survival of the right of action in heirs and personal representatives in case of death. Under this provision, the Supreme Court of Montana in Dillon against this same defendant in 1909 held that the action authorized in case of death was upon the right of action existing in the original person before death, and that, when the death was instantaneous at the time of the injury, there was no cause of action to survive, and therefore the action could not be maintained by the heirs or personal representatives. That seems to be the correct rule, from reason as well as authority, and therefore the present action could not be maintained under this statute. It was, however, held by the court that it could be maintained under the two former statutes, the Code provision, and the act of 1903, and this is clearly correct, unless the latter act was repealed by

the act of 1905, because there was actionable negligence under the act of 1903, that of the signalman, and the engineer of the light engines, and perhaps common-law negligence under the Code provision, as to the defective engine, one of the two light ones, and the action was authorized under the Code provision, if not under the act of 1903. I am of the opinion that there was no repeal of the act of 1903 or any part thereof by the act of 1905. The provisions are somewhat alike, and yet in some respects different. I see no reason why they may not stand together. If a recovery should be sought in an action for the negligence of other coemployés than those specifically named in the act of 1903, then the injured person could maintain the action under the act of 1905, though his heirs and representatives might not be able to, if his death occurred precisely at the time of the accident. Such an action could not be maintained under the act of 1903. The act of 1903 extended the right of action beyond the Code provision by eliminating as a defense the negligence of certain specifically named coemployés, but not all coemployés. So that it cannot be said the acts were any two of them alike, nor do I think they are inconsistent. The damages are different under the act of 1905, because only the right of action existing prior to the death survived. There was no new cause of action provided for the heirs and next of kin. The damages were such as the injured person suffered, and the recovery was for them only, while the damages under the Code provision were such as were suffered by the heirs and personal representatives themselves and such as were just under all the circumstances. In the complaint these two statutes, the Code provision and the act of 1903, were alleged, not specifically, but in general terms, and no mention was made of the act of 1905 in any way. The answer admitted the acts were of the general character alleged, and did not allege the act of 1905. I do not see that any injury was done the defendant by ruling out the act of 1905. The jury had nothing to do with its provisions and its effect upon the other acts was a matter of law, which the court decided, and I think correctly.

[6, 7] The jury upon the evidence, and in view of the statutes of Montana, very properly found the defendant guilty of negligence, which caused the conductor's death. They could not have found differently. I think they were also justified in finding the deceased free from contributory negligence. There were several rules bearing upon this subject put in evidence.

Subdivision A, rule 299, provided for the flagging of a train stopped or delayed when it might be overtaken by another train. Subdivision 3 of rule 20 on time card provided that block signal rules in no way relieved trainmen from the necessity of flagging, and conductors should impress this upon trainmen. The train must at all times be as fully protected as prior to block signal operation. Subdivision G of rule 298, however, provided that, when a train was occupying the main track between switches at stations, no signal need be sent out except when the delay was unusual, view obstructed, or weather such as to prevent seeing far enough ahead to avoid accident, and as a general rule responsibility for rear collisions at stations rested with

the approaching trains. All the facts stated in this last rule existed in this case, and would seem to have excused the conductor from complying with the two former rules quoted. See, also, Northern Pacific Railroad Company v. Poirier, 167 U. S. 48, 17 Sup. Ct. 741, 42 L. Ed. 72, which considered the effect of the two first rules referred to. The general superintendent of defendant testified that any one called upon to apply this last rule referred to should use his · judgment as to whether a flagging was required. Under all this evidence, I think it was a question for the jury to say whether the deceased was free from contributory negligence. It could not be determined as a matter of law. I do not think we should disturb this finding by the jury.

[8] Without discussing them in detail, I think no errors were committed in the reception of evidence, or in the charge, calling for a reversal and another trial. It seems to me the verdict was excessive, and should be reduced to $5,000. The statute required the damages to be such as under all the circumstances were just. The deceased was 47 years old, and unmarried. He left a mother 79 years old, a sister under 40 years of age, and several brothers living in the East. He had lived in the West 22 years, and had been to visit his relatives in the East but twice in that time, the last 7 years before his death. His earning capacity was $150 per month. He had accumulated no property, and he sent but little money to his relatives. The damages suffered by his heirs by his death were necessarily very small, not even $5,000.

[9] Nor do I think it was a case for an extra allowance of costs. It was not a difficult and extraordinary case, and therefore the court had no power to make the allowance.

Judgment and order denying motion for new trial reversed and new trial granted, with costs to appellant to abide event unless the plaintiff shall, within 20 days, stipulate to reduce the verdict to the sum of $5,000, as of the date of the rendition thereof, in which event the judgment is modified accordingly, and as so modified is, together with the order denying motion for new trial, affirmed without costs of this appeal to either party. · Order granting additional allowance reversed, without costs. All concur, except McLENNAN, P. J., who dissents and votes for reversal of the judgment and order denying motion for new trial, as well as the order granting additional allowance.