Fannie F. Loucks et al., as Administrators of the Estate
of Everett A. Loucks, Deceased, Appellants, v.
Standard Oil Company of New York, Respondent.

Negligence — action against defendant for death of plain-
tiff's intestate run down and killed, while traveling in state of
Massachusetts, through negligence of defendant's employees
— when plaintiff, who is a resident of this state, may maintain
an action against defendant, a corporation of this state, under
the Massachusetts statute providing a remedy in such cases.

This action is brought to recover damages for injuries resulting
in the death of plaintiff's intestate, who, while traveling on a highway
in the state of Massachusetts, was run down and killed through the
negligence of the defendant's servants then engaged in its business.
He left a wife and two children, residents of New York. A statute
of Massachusetts (R. L. ch. 171, § 2, as amended by L. 1907, ch. 375)
provides that " if a person or corporation by his or its negligence, or
by the negligence of his or its agents and servants while engaged in
his or its business, causes the death of a person who is in the exercise
of due care, and not in his or its employment or service, he or it shall
be liable in damages in the sum of not less than $500, nor more than
$10,000, to be assessed with reference to the degree of his or its culpa-
bility, or that of his or its servants, to be recovered in an action of
tort commenced within two years after the injury which caused the
death by the executor or administrator of the deceased; one-half
thereof to the use of the widow and one-half to the use of the children
of the deceased, or if there are no children, the whole to the use of
the widow, or if there is no widow, the whole to the use of the next
of kin." Upon a review of the history of the statutes of this char-
acter and the authorities relative to the right of recovery in one juris-
diction for injuries suffered in another jurisdiction, under the statutes
of the latter, held,

First, that the statute in question is not penal within the rules of
private international law and, therefore, is not subject to the rule that
the courts of one country will not execute the penal laws of another
country.

Second, that although the statute differs from our own, the right
to recovery is not conditioned upon the existence of a kindred statute
here.

Third, that since public policy does not prohibit the assumption of
jurisdiction by our courts, and mere differences of remedy do not

count, the right of action under the Massachusetts statute in question may be enforced by our courts. (*McDonald* v. *Mallory*, 77 N. Y. 546; *Leonard* v. *Columbia Steam Navigation Co.*, 84 N. Y. 48; *Wooden* v. *W. N. Y. & P. R. R. Co.*, 126 N. Y. 10; *Kiefer* v. *Grand Trunk R. Co.*, 12 App. Div. 28; affd., 153 N. Y. 688, explained and distinguished.)

*Loucks* v. *Standard Oil Co.*, 172 App. Div. 227, reversed.

(Argued May 3, 1918; decided July 12, 1918.)

APPEAL from a judgment entered May 12, 1916, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, which reversed an order of Special Term denying a motion by defendant for judgment in its favor upon the pleadings and granted said motion.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. Lee Olmsted* for appellants. This action is maintainable in the courts of the state of New York. The statute of the state of Massachusetts is not strictly penal and the right of action created by it is transitory. (*Huntington* v. *Attrell*, 146 U. S. 657; *B. & M. R. R.* v. *Hurd*, 108 Fed. Rep. 116; *Hill* v. *B. & M. R. R.*, 77 N. H. 151; *O'Sullivan* v. *Felix*, 233 U. S. 318; *Meagher* v. *Lehigh Valley*, 226 U. S. 412; *Kansas City R. R. Co.* v. *Albers Co.*, 223 U. S. 573; *Converse* v. *Hamilton*, 224 U. S. 343; *Bigelow* v. *Old Dominion Copper Co.*, 225 U. S. 111; *Wood* v. *Cheeseborough*, 228 U. S. 672; *Whitlow* v. *N. R. R. Co.*, 114 Tenn. 344.) The courts of the state of New York should not decline to take jurisdiction in this case because of any dissimilarity between the laws of the state of Massachusetts and the laws of the state of New York. (*Lauria* v. *E. I. D. P. D. N. Co.*, 241 Fed. Rep. 687; *Boyle* v. *Southern Ry. Co.*, 36 Misc. Rep. 289.) It is not contrary to the public policy of the state of New York as expressed in its statutes or in the decisions of the courts of the state to enforce the

cause of action set forth in the complaint herein. (*Wooden v. W. N. Y. & P. R. R. Co.*, 126 N. Y. 10; *Matter of Degarmo*, 86 Hun, 390; *Keiffer v. G. T. R. R. Co.*, 12 App. Div. 28; *Strauss v. N. Y., N. H.. & H. R. R. Co.*, 91 App. Div. 583; *Zeikus v. F. E. C. Ry. Co.*, 144 App. Div. 91; 153 App. Div. 345; *Pensabene v. Auditore Co.*, 78 Misc. Rep. 538; *Matter of Post v. Burger*, 216 N. Y. 544; *Johnson v. Phœnix Bridge Co.*, 197 N. Y. 316; *Benyak v. Lehigh Coal Co.*, 166 App. Div. 829.)

*Lyman M. Bass* for respondent. The Massachusetts statute is penal and, therefore, any action thereunder should not be permitted in the courts of New York state. (*W. T. & C. Co. v. Kilderhouse*, 87 N. Y. 430; *Langdon v. N. Y., L. E. & W. R. R. Co.*, 58 Hun, 122; *Hutchinson v. Stadler*, 85 App. Div. 424; *Manhattan Life Ins. Co. v. Johnson*, 115 App. Div. 429; *Willis v. Cameron*, 12 Abb. Pr. 245; *Scoville v. Canfield*, 14 Johns. 338; *Curtiss v. D., L. & W. R. R. Co.*, 74 N. Y. 116; 3 Abbott's N. Y. Digest, 396; 15 id. 253; *Crum v. Bliss*, 47 Conn. 592; *McCarthy v. W. L. Co.*, 219 Mass. 566; *Adams v. F. R. R. Co.*, 67 Vt. 76.) The Massachusetts statute should not be enforced by this court for the reason that the death statute of New York and the death statute of Massachusetts, under which the action is brought, are not substantially similar. (*Wooden v. W. N. Y. & Penn. R. R. Co.*, 126 N. Y. 10; *Leonard v. C. S. N. Co.*, 84 N. Y. 48; *McDonald v. Mallory*, 77 N. Y. 547; *Richardson v. N. Y. C. R. R. Co.*, 98 Mass. 85; *Texas & Pacific R. R. Co. v. Richards*, 68 Tex. 375; *St. Louis, Iron Mountain & Southern R. R. Co. v. McCormick*, 1 L. R. A. 804; *Ash v. B. & O. R. R. Co.*, 72 Md. 144.)

CARDOZO, J. The action is brought to recover damages for injuries resulting in death. The plaintiffs are the administrators of the estate of Everett A. Loucks. Their intestate, while traveling on a highway in the state of

Massachusetts, was run down and killed through the negligence of the defendant's servants then engaged in its business. He left a wife and two children, residents of New York. A statute of Massachusetts (R. L. ch. 171, § 2, as amended by L. 1907, ch. 375) provides that " if a person or corporation by his or its negligence, or by the negligence of his or its agents and servants while engaged in his or its business, causes the death of a person who is in the exercise of due care, and not in his or its employment or service, he or it shall be liable in damages in the sum of not less than $500, nor more than $10,000, to be assessed with reference to the degree of his or its culpability, or that of his or its servants, to be recovered in an action of tort commenced within two years after the injury which caused the death by the executor or administrator of the deceased; one-half thereof to the use of the widow and one-half to the use of the children of the deceased, or if there are no children, the whole to the use of the widow, or if there is no widow, the whole to the use of the next of kin." The question is whether a right of action under that statute may be enforced in our courts.

(1) " The courts of no country execute the penal laws of another " (*The Antelope,* 10 Wheat. 66, 123). The defendant invokes that principle as applicable here. Penal in one sense, the statute indisputably is. The damages are not limited to compensation; they are proportioned to the offender's guilt. A minimum recovery of $500 is allowed in every case. But the question is not whether the statute is penal in some sense. The question is whether it is penal within the rules of private international law. A statute penal in that sense is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong (*Huntington* v. *Attrill,* 146 U. S. 657, 668; *Hunting-*

*ton* v. *Attrill,* 1893 A. C. 150, 156; *Brady* v. *Daly,* 175
U. S. 148, 154, 157; *Raulin* v. *Fischer,* 1911 2 K. B.
93; Dicey, Conflict of Laws, p. 209). The purpose must
be, not reparation to one aggrieved, but vindication of
the public justice (*Huntington* v. *Attrill,* 146 U. S. 668;
*Brady* v. *Daly, supra).* The Massachusetts statute has
been classified in some jurisdictions as penal, and in
others as remedial. Connecticut, Rhode Island and
Vermont put it in the first category (*Cristilly* v. *Warner,*
87 Conn. 461; *Gardner* v. *N. Y. & N. E. R. R. Co.,* 17
R. I. 790; *O'Reilly* v. *N. Y. & N. E. Ry. Co.,* 16 R. I.
388; *Adams* v. *Fitchburg R. R. Co.,* 67 Vt. 76. See also
*Raisor* v. *C. & A. Ry. Co.,* 215 Ill. 47). New Hampshire
and some of the Federal courts put it in the second
(*Hill* v. *B. & M. R. R. Co.,* 77 N. H. 15, where the subject
is fully considered; *B. & M. R. R. Co.* v. *Hurd,* 108
Fed. Rep. 116; *Mallory* v. *Am. Hide & Leather Co.,* 148
Fed. Rep. 482. See also *Whitlow* v. *Nashville, C. & S. L. R.
Co.,* 114 Tenn. 344). The courts of Massachusetts have
said that the question is still an open one (*Boott Mills*
v. *B. & M. R. R.,* 218 Mass. 582, 592). No matter
how they may have characterized the act as penal, they
have not meant to hold that it is penal for every purpose
(218 Mass. 592). Even without that reservation by
them, the essential purpose of the statute would be a
question for our courts (*Huntington* v. *Attrill,* 146 U. S.
683; 1893 A. C. 155; *Hill* v. *B. & M. R. R. Co., supra).*

We think the better reason is with those cases which
hold that the statute is not penal in the international
sense. On that branch of the controversy, indeed, there
is no division of opinion among us. It is true that the
offender is punished, but the purpose of the punishment
is reparation to those aggrieved by his offense (*Comm.*
v. *B. & A. R. R. Co.,* 121 Mass. 36, 37; *Comm.* v. *Eastern
R. R. Co.,* 5 Gray, 473, 474). The common law did not
give a cause of action to surviving relatives (*Ins. Co.* v.

*Brame*, 95 U. S. 754, 757; *Dennick* v. *R. R. Co.*, 103 U. S. 11; *The Harrisburg*, 119 U. S. 199; *Admiralty Commissioners* v. *S. S. Amerika*, 1917 A. C. 38)/ In the light of modern legislation, its rule is an anachronism. Nearly everywhere, the principle is now embodied in statute that the next of kin are wronged by the killing of their kinsman. The family becomes a legal unit, invested with rights of its own, invested with an interest in the continued life of its members, much as it was in primitive law (Maine, Ancient Law, pp. 121, 122, 178; 1 Pollock & Maitland, History of English Law, p. 24; Holmes, The Common Law, p. 342). The damages may be compensatory or punitive according to the statutory scheme (See 8 Ruling Case Law, title Death, sec. 120, where statutes are collated). In either case, the plaintiffs have a grievance above and beyond any that belongs to them as members of the body politic. They sue to redress an outrage peculiar to themselves.

We cannot fail to see in the history of the Massachusetts statutes a developing expression of this policy and purpose. The statutes have their distant beginnings in the criminal law. To some extent the vestiges of criminal forms survive. But the old forms have been filled with a new content. The purpose which informs and vitalizes them is the protection of the survivors. They are moods and phases, the particular and varying expression, of a tendency in legislation as general as the common law. They are not to be viewed in isolation, apart from the stream of events. At first, the remedy was given only when the wrongdoer was a common carrier/(St. 1840, ch. 80). That statute goes back to 1840, antedating Lord Campbell's Act in England (St. 9 & 10 Vict. ch. 93, 1846). The remedy was by indictment and fine, the fine being payable to the widow and next of kin. If there were no survivors of the prescribed class, there could be no indictment/(*Comm.* v. *B. & A. R. R. Co.*,

121 Mass. 36). The reason was that even then the dominant purpose was reparation to the family. But later an alternative remedy by civil action at the suit of the executor or administrator became available even against carriers (*Hudson* v. *L. & B. R. R.*, 185 Mass. 515, 516; *Grella* v. *Lewis Wharf Co.*, 211 Mass. 54, 58). Then other statutes gave a civil remedy against other wrongdoers, and a civil remedy exclusively. Some statutes were confined to cases where the defendant was the employer of the decedent (St. 1887, ch. 270; R. L. ch. 106, § 73; *Smith* v. *Thomson-Houston El. Co.*, 188 Mass. 371). Finally there came one which gave a remedy against all persons who had not otherwise been made liable (R. L. ch. 171, § 2). That is the statute sued on. The remedy is civil; it is an action of tort.

Through all this legislation there runs a common purpose (*Boott Mills* v. *B. & M. R. R. Co.*, supra, 586; *Brown* v. *Thayer*, 212 Mass. 392). It is penal in one element and one only: the damages are punitive. The courts of Massachusetts do not give punitive damages even for malicious torts except by force of statute (*Boott Mills* v. *B. & M. R. R. Co.*, supra, 588; *Ellis* v. *Brockton Pub. Co.*, 198 Mass. 538). That may have led them to emphasize unduly the penal element in such recoveries. But the punishment of the wrongdoer is not designed as atonement for a crime; it is solace to the individual who has suffered a private wrong. This is seen in many tokens. The employer may be innocent himself. Smart money will still be due in proportion to his servant's negligence. That is a distribution of burdens more characteristic of torts than crimes. But even more significant is the distribution of benefits. All the statutes are *in pari materia*. All or none are penal in the international sense (*Boott Mills Co.* v. *B. & M. R. R. Co.*, supra). Under all, liability is conditioned upon the existence of a widow or of next of kin. Under some,

there must be proof also that the next of kin were dependent on the decedent's wages for support (R. L. ch. 106, § 73). That restriction brings the dominant purpose into clear relief as reparation to those aggrieved. Other purposes may be served at the same time. It is easy to cite dicta that seem to give them prominence (McCarthy v. Wood Lumber Co., 219 Mass. 566; Hudson v. L. & B. R. R. Co., 185 Mass. 510; Mulhall v. Fallon, 176 Mass. 266, 269). They are dicta only. Nor are all the dicta on one side (Brown v. Thayer, 212 Mass. 392, 398; Upson v. B. & M. R. R., 211 Mass. 446; Grella v. Lewis Wharf Co., 211 Mass. 54, 58). There are cross-currents and eddies in the stream. We follow the main course. The executor or administrator who sues under this statute is not the champion of the peace and order and public justice of the commonwealth of Massachusetts. He is the representative of the outraged family. He vindicates a private right.

(2) Another question remains. Even though the statute is not penal, it differs from our own. We must determine whether the difference is a sufficient reason for declining jurisdiction.

A tort committed in one state creates a right of action that may be sued upon in another unless public policy forbids. That is the generally accepted rule in the United States (Huntington v. Attrill, 146 U. S. 657, 670; Stewart v. B. & O. R. R. Co., 168 U. S. 445; N. Pac. R. R. Co. v. Babcock, 154 U. S. 190; A., T. & St. Fe Ry. Co. v. Sowers, 213 U. S. 55, 67, 68; Cuba R. R. Co. v. Crosby, 222 U. S. 473, 478, 479; Howarth v. Lombard, 175 Mass. 570; Walsh v. B. & M. R. R., 201 Mass. 527, 530). It is not the rule in every jurisdiction where the common law prevails. In England it has been held that the foreign tort must be also one by English law (The Halley, L. R. 2 P. C. 193, 204; Phillips v. Eyre, L. R. 6 Q. B. 1, 28; Carr v. Fracis Times & Co., 1902 A. C. 176, 182;

Dicey, Conflict of Laws, p. 645; 6 Halsbury, Laws of England, p. 248), which then becomes the source and measure of the resulting cause of action (*Machado* v. *Fontes*, 1897 2 Q. B. 231; Beale, Conflict of Laws, § 163). That is certainly not the rule with us. But there are some decisions in death cases which suggest a compromise. They say that jurisdiction will be refused unless the statutes of the two states are substantially the same. That is an approach to the English rule. But then they say that if substantial correspondence exists, it is the right of action under the foreign statute, and not the statute of the forum, which our courts will enforce. To that extent, there is a departure from the English rule. There is little doubt about the wisdom of the departure. What is subject to criticism, is the approach. The question is whether the enforcement of a right of action for tort under the statutes of another state is to be conditioned upon the existence of a kindred statute here. Support for the restriction is supposed to be found in four cases in this court: *McDonald* v. *Mallory* (77 N. Y. 546); *Leonard* v. *Columbia Steam Navigation Co.* (84 N. Y. 48); *Wooden* v. *Western N. Y. & P. R. R. Co.* (126 N. Y. 10), and *Kiefer* v. *Grand Trunk R. Co.* (12 App. Div. 28; affd., on opinion below, 153 N. Y. 688).

*McDonald* v. *Mallory* is altogether irrelevant. In that case, death occurred upon the high seas. The ship hailed from this state, was registered in one of our ports, and was owned by one of our citizens. She was, therefore, constructively part of our territory. For that reason, our law governed, and the action was sustained. RAPALLO, J., in the course of his opinion, said that the laws of New York have no operation in foreign jurisdictions, and that where the wrong is suffered elsewhere, " no action therefor can be maintained here, at least without proof of the existence of a similar statute in the place where the wrong was committed." That statement was accurate as applied

to the case that was then at hand. There *must* be a similar statute, *i. e.*, a statute giving a cause of action for death, in the place where death is caused. *Locus regit actum.* It is quite another thing to say that if there *is* a foreign statute, it must be duplicated here.

In *Leonard* v. *Columbia Steam Navigation Co.* (*supra*) the death occurred in Connecticut, where there was a statute similar to our own. The court held that the action would lie. It was unnecessary to determine whether there would have been another result if the statutes had been different. Judge RAPALLO's statement of the rule in *McDonald* v. *Mallory* was quoted as if it sustained a requirement of correspondence. That was obviously a misapprehension of its meaning. There was a citation of some English cases (*Madrazo* v. *Willes*, 3 B. & Ald. 353; *Melan* v. *Duke de Fitz-James*, 1 B. & P. 138; *Mostyn* v. *Fabrigas*, 1 Cowp. 161). They have little bearing on the subject.

In *Wooden* v. *Western N. Y. & P. R. R. Co.* (*supra*) the death occurred in Pennsylvania. The case was heard upon demurrer to the complaint. Counsel on each side assumed that the statutes must be substantially similar. The argument was confined to the question whether they *were* similar. Not unnaturally the court proceeded upon the same assumption. *McDonald* v. *Mallory* and *Leonard* v. *Columbia Steam Navigation Co.* (*supra*) were the only cases cited. The court found substantial similarity between the statutes except in respect of the measure of recovery. The Pennsylvania statute did not limit the damages. Our statute then prescribed a maximum of $5,000. The difference was thought to affect the remedy rather than the right. We said that the right created by the foreign statute would be enforced, but subject to the restriction in amount which expressed the local policy. There was some suggestion that if the defendant were a non-resident, the restriction would not

apply. The suggestion sounds like an echo of the theory of the statute personal, a body of national law which the citizen carries about with him (Beale, Conflict of Laws, §§ 54, 55; *Am. Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 356). That is a theory which has yielded generally in this country to the principles of the territorial system and the doctrine of vested rights (Beale, *supra*, §§ 70, 73). But we do not need to go into distinctions between residents and non-residents. Even in its application to residents, the ruling in the *Wooden* case expresses a conception of our public policy which is not to be extended. The Supreme Court of the United States has held under like conditions that the foreign law governs not only the definition of the tort, but also the assessment of the damages (*Northern Pac. R. R. Co.* v. *Babcock*, 154 U. S. 190; *Slater* v. *Mexican Nat. R. R. Co.*, 194 U. S. 120, 126). An amendment to the Constitution has abrogated the limitation upon the amount of the recovery, and established the public policy of the State on a new and broader basis (Const. art. 1, § 18). In these circumstances, the authority of the *Wooden* case does not extend beyond the specific point decided.

In *Kiefer* v. *Grand Trunk Ry. Co.* '(*supra*) the death occurred in Canada. Canada has a statute similar to our own. The chief variance is in the award of interest. Limiting the ruling in the *Wooden* case, we held that interest had relation to the substance of the right, and must be governed by the foreign statute.

Those are the only decisions of this court which tend to support the rule of similarity. The rule itself has no more stable foundation than a misapprehended dictum in *McDonald* v. *Mallory*. This was pointed out by BISCHOFF, J., in *Boyle* v. *Southern R. Co.* (36 Misc. Rep. 289, 291) and recently by VEEDER, J., in *Lauria* v. *Du Pont De Nemours & Co.* (241 Fed. Rep. 687). (See

also *Nelson* v. *Chesapeake & O. R. R. Co.*, 88 Va. 971, 975, 976, reviewing many cases.) No case has yet arisen in which the statutes were so dissimilar that acceptance or rejection of the rule was necessary to a decision. The time has come to re-examine its foundations.

A foreign statute is not law in this state, but it gives rise to an obligation, which, if transitory, " follows the person and may be enforced wherever the person may be found " (*Slater* v. *Mex. Nat. R. R. Co.*, *supra; Lauria* v. *Du Pont De Nemours & Co.*, *supra; Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478). " No law can exist as such except the law of the land; but * * * it is a principle of every civilized law that vested rights shall be protected." (Beale, *supra*, § 51). The plaintiff owns something, and we help him to get it (*Howarth* v. *Lombard*, 175 Mass. 570; *Walsh* v. *B. & M. R. R.*, 201 Mass. 527; *Walsh* v. *N. Y. & N. E. R. R. Co.*, 160 Mass. 571; Beale, Conflict of Laws, §§ 51, 73). We do this unless some sound reason of public policy makes it unwise for us to lend our aid. " The law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there " (*Cuba R. R. Co.* v. *Crosby*, *supra*, 478). Sometimes, we refuse to act where all the parties are non-residents (*Burdick* v. *Freeman*, 120 N. Y. 420; *English* v. *N. Y., N. H. & H. R. R. Co.*, 161 App. Div. 831). That restriction need not detain us: in this case all are residents. If aid is to be withheld here, it must be because the cause of action in its nature offends our sense of justice or menaces the public welfare (*A., T. & St. F. Ry. Co.* v. *Sowers*, 213 U. S. 55, 67, 68; *Stewart* v. *Balt & O. R. R. Co.*, 168 U. S. 445; *Zeikus* v. *Florida E. C. Ry. Co.*, 153 App. Div. 345, 350). Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives

the right, the mere fact that we do not give a like right
is no reason for refusing to help the plaintiff in getting
what belongs to him.  We are not so provincial as to
say that every solution of a problem is wrong because
we deal with it otherwise at home.  Similarity of legis-
lation has indeed this importance: its presence shows
beyond question that the foreign statute does not offend
the local policy.  But its absence does not prove the
contrary.  It is not to be exalted into an indispensable
condition.  The misleading word " comity " has been
responsible for much of the trouble.  It has been fertile
in suggesting a discretion unregulated by general princi-
ples (Beale, Conflict of Laws, § 71).  The sovereign in its
discretion may refuse its aid to the foreign right (*St. Louis,
I. M. & So. Ry. Co.* v. *Taylor*, 210 U. S. 281; *Dougherty*
v. *Am. McKenna Process Co.*, 255 Ill. 369).  From this
it has been an easy step to the conclusion that a like
freedom of choice has been confided to the courts.  But
that, of course, is a false view (*Cuba R. R. Co.* v. *Crosby,
supra,* 478).  The courts are not free to refuse to enforce
a foreign right at the pleasure of the judges, to suit the
individual notion of expediency or fairness.  They do
not close their doors unless help would violate some
fundamental principle of justice, some prevalent con-
ception of good morals, some deep-rooted tradition of the
common weal.

This test applied, there is nothing in the Massachusetts
statute that outrages the public policy of New York.
We have a statute which gives a civil remedy where
death is caused in our own state.  We have thought it
so important that we have now imbedded it in the
Constitution (Const. art. 1, § 18).  The fundamental
policy is that there shall be some atonement for the
wrong.  Through the defendant's negligence, a resident
of New York has been killed in Massachusetts.  He has
left a widow and children who are also residents.  The

law of Massachusetts gives them a recompense for his death. It cannot be that public policy forbids our courts to help in collecting what belongs to them. We cannot give them the same judgment that our law would give if the wrong had been done here. Very likely we cannot give them as much. But that is no reason for refusing to give them what we can. We shall not make things better by sending them to another state, where the defendant may not be found, and where suit may be impossible. Nor is there anything to shock our sense of justice in the possibility of a punitive recovery. The penalty is not extravagant. It conveys no hint of arbitrary confiscation (*Standard Oil Co. of Ind.* v. *Missouri*, 224 U. S. 270, 286). It varies between moderate limits according to the defendant's guilt. We shall not feel the pricks of conscience if the offender pays the survivors in proportion to the measure of his offense. We have no public policy that prohibits exemplary damages or civil penalties. We give them for many wrongs. To exclude all penal actions would be to wipe out the distinction between the penalties of public justice and the remedies of private law. Finally, there are no difficulties of procedure that stand in the way. We have a statute authorizing the triers of the facts, when statutory penalties are sued for, to fit the award to the offense (Code Civ. Pro. § 1898). The case is not one where special remedies established by the foreign law are incapable of adequate enforcement except in the home tribunals (*Marshall* v. *Sherman*, 148 N. Y. 9; *Howarth* v. *Angle*, 162 N. Y. 179, 181, 189; *Slater* v. *Mex. Nat. R. R. Co.*, *supra*).

We hold, then, that public policy does not prohibit the assumption of jurisdiction by our courts, and that this being so, mere differences of remedy do not count. For many years the courts have been feeling their way in the enforcement of these statutes. A civil remedy for another's death was something strange and new, and

it did not find at once the fitting niche, the proper category, in the legal scheme. We need not be surprised, therefore, if some of the things said, as distinguished from those decided, must be rejected to-day. But the truth, of course, is that there is nothing *sui generis* about these death statutes in their relation to the general body of private international law. We must apply the same rules that are applicable to other torts; and the tendency of those rules to-day is toward a larger comity, if we must cling to the traditional term (*Walsh* v. *B. & M. R. R.,* 201 Mass. 527, 533). The fundamental public policy is perceived to be that rights lawfully vested shall be everywhere maintained. At least, that is so among the states of the Union (*Walsh* v. *N. Y. & N. E. R. R. Co.,* 160 Mass. 571, 573; *Walsh* v. *B. & M. R. R.,* supra; Beach, Uniform Interstate Enforcement of Vested Rights, 27 Yale Law Journal, 656). There is a growing conviction that only exceptional circumstances should lead one of the states to refuse to enforce a right acquired in another. The evidences of this tendency are many. One typical instance will suffice. For many years Massachusetts closed her courts to actions of this order based on foreign statutes (*Richardson* v. *N. Y. C. R. R. Co.,* 98 Mass. 85). She has opened them now, and overruled her earlier decisions (*Hanlon* v. *Leyland & Co., Ltd.,* 223 Mass. 438; *Walsh* v. *B. & M. R. R.,* supra). The test of similarity has been abandoned there. If it has ever been accepted here, we think it should be abandoned now.

The judgment of the Appellate Division should be reversed, and the order of the Special Term affirmed, with costs in the Appellate Division and in this court.

HISCOCK, Ch. J., CUDDEBACK, POUND, CRANE and ANDREWS, JJ., concur; COLLIN, J., dissents from decision of second question in opinion of CARDOZO, J.; otherwise concurs.

Judgment reversed, etc.