189 N.J. Super. 42 (1983)
458 A.2d 924
KENNETH A. CARTER, PLAINTIFF,
v.
TIMOTHY J. SANDBERG AND MRS. TIMOTHY J. SANDBERG, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, District Court Burlington County.
February 22, 1983.
*43 John B. Mathews for plaintiff (Mathews, Sitzler, Weishoff & Sitzler, attorneys).
Robert G. Holston for defendants (Holston, Holston and MacDonald, attorneys).
GOTTLIEB, J.J.D.R.C. (temporarily assigned).
In Sommer v. Kridel, 74 N.J. 446, 449 (1977), the Supreme Court held that a landlord has an obligation to make a reasonable effort to mitigate damages where a tenant wrongfully vacates a residence. The present case questions whether that doctrine is applicable to a suit in this State for damages arising *44 out of a tenancy in another state where the law of that jurisdiction does not require any effort toward mitigation of damages.
Plaintiff, a resident of California, owns a single-family home in San Antonio, Texas. Acting through a Texas realtor, plaintiff entered into a one-year lease, beginning on July 30, 1981, with defendant Timothy J. Sandberg. The monthly rental was $475 and a security deposit of $300 was given. Defendants occupied the home until mid-October 1981, when they left to move to New Jersey because of a newly available job opportunity. Defendants advised plaintiff about two or three weeks before they left that they were moving out. At the same time defendants contacted the realtor, asking that a substitute tenant be found and offering to pay for any fees earned by the realtor in obtaining another tenant.
The realtor brought a prospective replacement tenant to the home while defendants were still in residence. The prospective tenant appeared anxious to succeed to defendants' occupancy and requested that defendants accommodate him by leaving a few days earlier than originally planned. Defendants agreed and subsequently did so. The prospective tenant was then put in communication with plaintiff by the realtor. For reasons not indicated during the trial, the prospective tenant did not in fact replace defendants in occupying the home. Although plaintiff instructed the agent to try to get a replacement tenant, one was not obtained until March 1, 1982.
Plaintiff seeks to recover damages consisting of unpaid rental for November and December 1981 and January and February 1982, totalling $1,900, late charges of $190 (10% of the rental), $20 for cleaning the home after defendants left and $237.50 for the realtor's commission in getting a new tenant. Defendants have counterclaimed for a return of the $300 security deposit.
As indicated in Sommer v. Kridel, supra at 457, a landlord must demonstrate "reasonable diligence in attempting to re-let the premises" as an affirmative element of a cause of *45 action for unpaid rental. While each case must be judged on its own facts, the Supreme Court stressed that "the trial court shall consider, among other factors, whether the landlord, either personally or through an agency, offered or showed the apartment to any prospective tenants, or advertised it in local newspapers." Id. at 458-459. Plaintiff testified only that he directed the realtor to attempt to obtain a substitute tenant. There is no evidence showing what efforts, if any, were taken by the realtor that the court might decide that they were reasonable under the circumstances. There is not even an explanation why the available and anxious prospective tenant was not substituted for defendants. In conclusion, plaintiff has not affirmatively demonstrated a reasonable effort to mitigate damages.
This court, however, has been presented with the applicable law of Texas and takes judicial notice of it. Evid.R. 9(2). Texas law does not require any effort to mitigate damages. There a landlord has no duty to try to re-let where a tenant abandons leased premises. Stubbs v. Stuart, 469 S.W.2d 311 (Tex.Civ.App. 1971). Is Texas law to apply in the courts of this State in this situation or would public policy preclude such an event?
Absent public policy considerations, it is clear that Texas law must apply. Basic contract law dictates that "[t]he measure of damages for a breach of contract is determined by the law of the place of performance." Kentucky Dept. of Mental Health v. Mullins, 56 N.J. Super. 449, 463 (App.Div. 1959), aff'd 31 N.J. 598 (1960). It is not only the site of the residence which determines the applicable law, but it is the place where the lease was negotiated and performed.
Further examination of the specific rights embodied in a lease only strengthen a decision favoring the applicability of Texas law. Generally, leases create two kinds of rights: rights in property (in rem) and rights in a person (in personam). The former are concerned with an interest in real estate and characterize the interests of two or more competing parties in real *46 property. The laws of the site of the property determine the nature of those rights. Segal v. Greater Valley Terminal Corp., 83 N.J. Super. 120, 124-5 (App.Div. 1964). Personal rights, however, are indicative of more than the legal interest in property and are exemplified by the covenants in a lease. These would include agreements restricting use, covenants concerning habitability and agreements for the payment of rent. In re Barnett, 12 F.2d 73, 76-77 (2 Cir.1926), cert. den. sub nom. United Cigar Stores Co. v. Rayher, 273 U.S. 699, 47 S.Ct. 94, 71 L.Ed. 846 (1926). They are normally governed by the law of the state possessing the most substantial contacts with the transaction. HIMC Investment Co. v. Siciliano, 103 N.J. Super. 27, 34 (Law Div. 1968); Royal Store Fixture Co. v. N.J. Butter Co., 114 N.J. Super. 263, 267 (App.Div. 1971); Restatement, Conflict of Laws 2d, § 188 at 575 (1971); Mallory Assoc., Inc. v. Barving Realty Co., Inc., 300 N.Y. 297, 90 N.E.2d 468, 471 (Ct.App. 1949), reh. den. 300 N.Y. 680, 91 N.E.2d 331 (Ct.App. 1950). Texas law applies since it is both the site of the property and it is the place where the lease was negotiated and to be performed.
The analysis, however, cannot end here. Courts will not enforce a claim profoundly contradicting the public policy of their forum. Stone v. William Steinen Mfg. Co., 7 N.J. Super. 321, 332 (Cty.Ct. 1949), aff'd per curiam 6 N.J. Super. 178 (App. Div. 1950). That is not to say that any difference between the laws of this State and of a foreign jurisdiction are offensive to the public policy of New Jersey. Zotta v. Otis Elevator Co., 64 N.J. Super. 344, 349 (App.Div. 1960). "Rather, `public policy' in conflicts of law doctrine has been said to be `some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.'" Breslin v. Liberty Mutual Ins. Co., 134 N.J. Super. 357, 365-6 (App.Div. 1975), aff'd 69 N.J. 435 (1976), quoting from Judge Cardozo's opinion in Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198, 202 (Ct.App. 1918). Is there a public policy which will preclude the application of Texas law in this situation?
*47 The Supreme Court in Sommer v. Kridel, supra, held (74 N.J. at 456), that a landlord must make reasonable efforts to mitigate damages "as a matter of basic fairness," and because of "more modern notions of fairness and equity." The motivation behind its holding is inescapable. Such forceful language as "basic fairness" and "equity" indicates a strong public policy. The concept of mitigation is axiomatic when judging acceptable conduct towards a wrongly vacating tenant. While the courts of this State are normally open to the enforcement of foreign rights, they cannot patronize a claim which is so clearly antithetical to our own strong policy. Restatement, Conflict of Laws 2d, § 90 at 267 (1971). Accordingly, since plaintiff has failed to prove a reasonable effort to mitigate damage, it cannot prevail and the complaint is dismissed.
There remains the counterclaim for failure of plaintiff to return the $300 security deposit. In order to prove this cause of action, a former tenant must show three facts: the existence and subsequent termination of a landlord-tenant relationship, the receipt of a security deposit by the landlord and the failure of the landlord to return those deposit monies together with interest. Each of these elements has been proven in this case. As a result, the former landlord has the obligation to justify the failure to return the deposit monies and interest. Watson v. United Real Estate, Inc., 131 N.J. Super. 579, 582 (Cty.D.Ct. 1974).
As indicated earlier, plaintiff did obtain a new tenant during the term of defendants' lease, starting in March 1982. Plaintiff had to pay $237.50  one-half of a month's rent  to a realtor for the service of locating a new tenant. In addition, it did cost plaintiff $20 to clean the home to make it presentable to a new tenant. Both expenses are appropriately chargeable against the deposit. That leaves a balance of $42.50 for which no justification to retain has been proven by plaintiff.
The law of Texas concerning the award of a security deposit has not been submitted to this court for the purposes of taking judicial notice. In such a situation, Evid.R. 9(3) requires this *48 court to apply the law of New Jersey. See, also, Zotta v. Otis Elevator Co., supra 64 N.J. Super. at 349 ("The lex fori controls matters of remedy. ..." Emphasis in original). N.J.S.A. 46:8-21.1 requires the award of a double recovery of the monies a landlord is not justified in retaining.
In addition to $42.50  the amount of the security deposit wrongfully withheld  the court will add interest for the three-month period of actual occupancy  in the amount of 85¢. Doubled, this amounts to $86.70.
Ordinarily, the court would also award attorney's fees to a successful claimant under N.J.S.A. 46:8-21.1. However, no request for this has been made nor have any proofs by way of affidavit of services been submitted. R. 4:42-9(b). None will be allowed.
The court enters judgment on the counterclaim in favor of defendant for $86.70 together with interest from November 1, 1981, plus court costs.