956 F.2d 215
 Jack TUCKER, Plaintiff,
v.
R.A. HANSON COMPANY, INC., Defendant.
LOCKHEED-CALIFORNIA COMPANY, DIVISION OF LOCKHEED
CORPORATION, and H.K. Ferguson Company, a/k/a M.K.
Ferguson Company, Defendants-Third Party
Plaintiffs-Appellants,
v.
The OWL COMPANIES, Third Party Defendant-Appellee.
 No. 88-2105.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 3, 1992.
 
 Larry D. Beall of Beall, Pelton, O'Brien & Brown, Albuquerque, N.M., for plaintiffs-appellants.
 Sarah M. Bradley of Bradley & McCulloch, P.A., Albuquerque, N.M., for defendant-appellee.
 Before HOLLOWAY, ANDERSON and EBEL, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This appeal arises from an order granting summary judgment to third party defendant-appellee The Owl Companies ("Owl") and dismissing the claim for indemnification brought against Owl by defendants-appellants the H.K. Ferguson Company ("Ferguson") and Lockheed-California Company ("Lockheed").
 
 
 2
 * The plaintiff Jack Tucker was an employee of Owl when he was injured while working on a construction project at the White Sands Missile Range in New Mexico. Lockheed was the prime contractor on the project and had contracted with Ferguson as contract manager to design and construct a silo and hoist tilt mechanism. Ferguson in turn subcontracted with Owl. After the accident, Tucker brought a negligence action against Lockheed and Ferguson claiming that they had been negligent in the designing and preparation of plans for the project. Tucker and Ferguson then filed a third party complaint against Owl for indemnification based on an indemnity agreement in the Ferguson/Owl contract and a similar clause in the Ferguson/Lockheed contract, incorporated by reference in the Ferguson/Owl contract.[1] On the basis of these contract provisions, Lockheed and Ferguson were entitled to a defense and indemnification from Owl. Ferguson and Lockheed filed a motion for summary judgment, and Owl responded by filing a summary judgment motion of its own.
 
 
 3
 The district court granted summary judgment in Owl's favor.[2] The court determined that it must apply the conflicts law of New Mexico. This would ordinarily mean that the contract would be interpreted according to the law of the place of its making, in this instance, California. However, the district judge held that the issue here is not a matter of interpretation, but of enforcement; that even if the California courts would enforce the indemnification clause, the New Mexico courts cannot apply that law where it is contrary to the public policy of New Mexico. The court noted that it is likely that New Mexico has adopted the public policy exception to applying foreign law as stated in § 612 of the Restatement of Conflict of Laws, which provides:
 
 
 4
 No action can be maintained upon a cause of action created in another state the enforcement of which is contrary to the strong public policy of the forum.
 
 
 5
 The district judge stated that the New Mexico Supreme Court has found that N.M.Stat.Ann. § 56-7-1 (Michie 1978) expressly prohibits enforcement of the indemnification clause at issue.[3] Therefore, due to the strong public policy of the state as reflected in the statute, the court found that Owl's motion for summary judgment should be granted and the third party complaint should be dismissed, which rulings were entered. Lockheed and Ferguson timely appealed.
 
 
 6
 We review de novo the district court's determination of state law. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). We conclude that the district court was correct in holding that under New Mexico choice of law rules, the indemnity provisions are not enforceable because they are contrary to fundamental policies of the forum. We therefore affirm.
 
 II
 
 7
 When deciding diversity cases, federal courts apply the law of the state in which they are sitting. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). This includes applying the state choice of law rules. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). When considering the meaning and validity of contracts, New Mexico courts normally look to the place of contracting for the applicable law. Miller v. Mutual Benefit Health, 76 N.M. 455, 415 P.2d 841, 843 (1966). It is not disputed that California was the place where the Owl/Ferguson contract was entered into. California law would thus seem to apply, and the indemnity provision would appear valid. However, it is argued that since New Mexico was the place of performance for the contract, the contract should be interpreted according to New Mexico law. More importantly, "[a]lthough New Mexico applies the First Restatement of Conflicts generally, if the application of [a sister state's] law would violate New Mexico's public policy this Court is not bound." Sandoval v. Valdez, 91 N.M. 705, 580 P.2d 131, 133 (Ct.App.1978) (citation omitted). See also, Brasher v. Mobil Oil Corporation, 626 F.Supp. 434, 436 (D.N.M.1984).
 
 
 8
 It is clear that it is the policy of New Mexico not to enforce the indemnity provisions of construction contracts. N.M.Stat.Ann. § 56-7-1 (Michie 1991); Sierra v. Garcia, 746 P.2d 1105, 1108 (N.M.1987). However, it is not so clear that allowing California law to govern a California contract would be so "contrary to the strong public policy of the forum" as to require an exception to be made to the ordinary choice of law rules. Brasher v. Mobil Oil Corp., 626 F.Supp. at 436 (quoting Restatement of Conflict of Laws § 612). Under the view of both Restatements, the public policy exception is to be used only sparingly. A state should refuse to open its courts to claims under the law of sister states only in "extremely limited" circumstances. Restatement of Conflict of Laws § 612 cmt. c (1934). See also Restatement (Second) of Conflict of Laws § 90 cmt. a (1969) ("The rule of this Section has a very narrow scope of application.")
 
 
 9
 The original conception of the public policy exception was that some causes of action were so repugnant to the values of the forum state that the state courts would feel compelled to close their doors to them. State proscriptions against usury, prostitution, and gambling[4] were examples of the kind of public policies that for a state court to countenance such activities would in Justice Cardozo's words, "violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonweal." Loucks v. Standard Oil Co. of New York, 224 N.Y. 99, 120 N.E. 198, 202 (1918). Since every law is an expression of the public policy of the state, some higher threshold is needed to prevent the forum's law from being applied in every case. A strict construction of the public policy exception was felt necessary to prevent the whole field of conflicts of law from collapsing in on itself.
 
 
 10
 Few states have been able to restrict their use of the public policy exception to those rare instances advocated by the Restatements. See, e.g., Carter v. Sandberg, 189 N.J.Super. 42, 458 A.2d 924 (1983) (duty of landlord to mitigate); Owen v. Owen, 444 N.W.2d 710 (S.D.1989) (automobile guest statutes); Kasel v. Remington Arms Co., 24 Cal.App.3d 711, 101 Cal.Rptr. 314 (1972) (pain and suffering as element of tort damages). New Mexico adopted this somewhat lower threshold in Sandoval v. Valdez, supra, which applied the law of New Mexico rather than Colorado because of the state's fundamental public policy against uninsured motorist provisions in insurance contracts. It has been suggested that this practice is best understood not as representing the refusal of the court to entertain the action on public policy grounds under § 90 of the Restatement, but rather as simply using the state's policy as a substantive part of the more general interest-balancing calculation urged by § 6(2) of the Restatement (Second).[5]
 
 
 11
 The purpose of the anti-indemnity statute is to protect construction workers and future occupants of a building by ensuring that all those involved in its construction know that they will be held financially liable for their negligence. See Guitard v. Gulf Oil Co., 100 N.M. 358, 670 P.2d 969 (Ct.App.), cert. denied, 100 N.M. 327, 670 P.2d 581 (1983) [articulating policies behind prohibition of indemnity provisions in mining contracts]. Thus New Mexico law should control not so much because indemnity clauses in construction contracts violate "some fundamental principle of justice" but because they significantly interfere with New Mexico's efforts to produce safe workplaces and buildings.
 
 
 12
 California does have an interest in the enforceability of contracts entered into within California. But since the effect of the indemnity clause extends to the people of New Mexico, people who are not parties to the contract, under the Restatement approach New Mexico may appropriately apply its own law. In doing so it is not closing its courts to an offensive foreign cause of action in the classic public policy manner. Rather it is entertaining the action but choosing to apply New Mexico law because of the importance of that law to the interests of the state. If the result were otherwise New Mexico contractors could effectively nullify the anti-indemnity statute by simply having their agents execute their contracts in a jurisdiction which permits indemnity clauses.
 
 
 13
 Lockheed and Ferguson next argue that California law should govern since the Owl/Ferguson contract incorporated the Ferguson/Lockheed contract by reference and that contract included a provision stating that the contract would be governed by California law. However, the parties' choice of law does not govern if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement. See Restatement (Second) § 187(1). This is especially true here where the application of the law of the chosen state would be contrary to a fundamental policy of the forum state. Id. § 187(2)(b).
 
 
 14
 Finally, Lockheed and Ferguson say that even if the proper choice of law does void the indemnity provision, it should only do so insofar as the provision would indemnify Lockheed and Ferguson for their own negligence. They argue that it should not bar their claims for sums they are required to pay as a result of Owl's negligence. They seek the opportunity to show that the contract can be reformed in compliance with the statute, relying on Sierra v. Garcia, 746 P.2d 1105 (N.M.1985). Whatever the merits of the argument, we conclude that we should not consider the issue because it is presented for the first time on appeal. International Union of Operating Engineers, Local 953 v. Central National Life Insurance Company, 501 F.2d 902, 907 (10th Cir.1974), cert. denied. 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 397 (1975).
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The relevant portion of the Ferguson/Owl contract is paragraph 29, which provides:
 Constructor [Owl] shall defend and hold Ferguson harmless from all costs due to asserted claims or suits of others arising from Constructor's work, including the joint negligence of Ferguson and Constructor or its Client and Constructor.
 Paragraph E of the Modifications and Clarifications section of the Owl/Ferguson contract states:
 Ferguson and it's [sic] Client [Lockheed] anticipate entering into the Principal Subcontract which is attached herewith, and made a part of this Agreement. Constructor agrees to abide by the requirements of the Principal Subcontract as does Ferguson.
 Article 14 of the Ferguson/Lockheed contract, in turn, provides:
 Contractor [Ferguson] shall indemnify and hold harmless Lockheed, its officers and employees from any loss, cost, damage, expense or liability by reason of property damage or personal injury of whatever nature or kind arising out of, as a result of, or in connection with, such performance occasioned by the actions or omissions of Contractor, its employees, agents, subcontractors, and/or lower-tier subcontractors.
 
 
 [2]
 The complaint against Owl was thus dismissed. The underlying action continued, however. After a jury trial, judgment was entered in favor of Tucker and against both Ferguson and Hanson. The complaint against Lockheed was simultaneously dismissed
 
 
 [3]
 Section 56-7-1 provides in pertinent part that:
 Any provision, contained in any agreement relating to the construction, installation, alteration, modification, repair, maintenance, servicing, demolition, excavation, drilling, reworking, grading, paving, clearing, site preparation or development, of any real property, ... by which any party to the agreement agrees to indemnify the indemnitee, or the agents and employees of the indemnitee, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by, or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, or the agents or employees of the indemnitee, or any legal entity for whose negligence, acts or omissions any of them may be liable, is against public policy and is void and unenforceable....
 
 
 [4]
 See, e.g., Schlee v. Guckenheimer, 179 Ill. 593, 54 N.E. 302 (1899) (usury); Greenwood v. Curtis, 6 Mass. 358, 378 (1810) (slavery); Ayub v. Saloman, 252 S.W. 291 (Tx.Civ.App.1923) (gambling and liquor)
 
 
 [5]
 E. Scoles and P. Hay, Conflict of Laws 72-75 (1984)