**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

BOYD ROSENE AND ASSOCIATES,
INC.,

      Plaintiff-Appellant,

v.

KANSAS MUNICIPAL GAS AGENCY,
an interlocal municipal agency, and CITY
OF WINFIELD, KANSAS, a
municipality,

      Defendants-Appellees.

No. 96-5199
No. 96-5209
No. 96-5211

(D.C. No. 95-CV-674-B)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before ANDERSON, BALDOCK, and EBEL, Circuit Judges.

Plaintiff Boyd Rosene and Associates, Inc., appeals the district court's grant of

summary judgment in favor of Defendants Kansas Municipal Gas Agency (KMGA) and

the City of Winfield, Kansas, on its claims in this diversity suit.[1] KMGA and Winfield

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]     Plaintiff Boyd Rosene and Associates, Inc., is a corporation incorporated under the laws of Oklahoma and maintains its principal place of business in Oklahoma. Defendant Kansas Municipal Gas Agency is an agency created by various Kansas

cross-appeal the district court's denial of their request for attorneys' fees. They also seek an award of attorneys' fees incurred on this appeal. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm. We also deny the request for appellate attorneys' fees.

KMGA is an agency created by Kansas municipalities to provide its members with a reliable source of natural gas. Winfield is a member of KMGA, and in April, 1992, executed a contract (the City Agreement) with KMGA under which Winfield agreed to purchase at least 75% of its gas requirements for May 1, 1994, to April 30, 1995, from KMGA in exchange for a management fee. Under the City Agreement, KMGA was empowered to combine Winfield's gas requirements with those of other member cities when economically worthwhile.

On May 1, 1994, KMGA entered into a contract with Boyd Rosene (KMGA-Rosene Agreement), a producer of natural gas, under which it agreed to buy gas to meet its members' needs. The KMGA-Rosene Agreement contains an integration clause and sets forth the entire agreement between the parties.

---

municipalities and is organized under the Kansas Interlocal Cooperation Act, Kan. Stat. Ann. § 12-2901, et seq. (1991). KMGA maintains its principal place of business in Kansas. Under Kansas law, KMGA is to be treated as a corporation, see id. § 12-2904a, and will be treated as such for diversity purposes, see, e.g., Kansas Municipal Gas Agency v. Vesta Energy Co., Inc., 843 F. Supp. 1401, 1402-03 (D. Kan. 1994). Defendant City of Winfield is also a citizen of Kansas for diversity purposes. See Moor v. County of Alameda, 411 U.S. 693, 717-18 (1973), overruled in other respects, Monell v. Department of Social Svcs., 436 U.S. 658 (1978). Because diversity is complete and the amount in controversy exceeds $75,000, exclusive of costs and interest, diversity jurisdiction exists in this case. See 28 U.S.C. § 1332.

Between May 1, 1994, and April 30, 1995, Winfield failed to purchase 75% of its gas requirements from KMGA. Under the terms of the City Agreement, Winfield paid KMGA a deficiency payment of $34,658.19, equal to the management fee multiplied by the volume of natural gas it should have purchased from KMGA to meet its 75% obligation.

On December 1, 1995, Boyd Rosene filed its second amended complaint bringing claims for (1) breach of contract, (2) negligent misrepresentation, (3) deceit, and (4) tortious interference with contract. Boyd Rosene's claims stem from its argument that the KMGA-Rosene Agreement required KMGA or Winfield to purchase at least 75% of Winfield's natural gas requirements from Boyd Rosene, and that the Agreement was breached when a substantial portion of Winfield's requirements were purchased elsewhere.

With respect to the breach of contract claim, the district court ruled that the KMGA-Rosene Agreement was unambiguous and required KMGA to take an amount of natural gas equal to the Estimated Minimum Day Requirement set forth in Exhibit A to the contract. As the parties agreed that KMGA had purchased those quantities of gas from Boyd Rosene, the district court ruled the Agreement was not breached. The district court also ruled that Boyd Rosene enjoyed no rights under the City Agreement. With respect to the remaining claims, the district court assumed that Boyd Rosene could prove the elements of the claims but ruled that any damages to which Boyd Rosene would be

3

entitled were governed by ¶ 2.7 of the KMGA-Rosene Agreement. As ¶ 2.7 limited damages to an amount required to make Boyd Rosene whole for any unpurchased minimum quantities of gas and the minimum quantities were purchased, the district court ruled that Boyd Rosene was not entitled to damages on its remaining claims.

We review de novo the grant of summary judgment and apply the same legal standards as the district court under Rule 56. Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

All parties agree that Kansas law applies to the contract claim. The question of whether a contract is ambiguous is for the court, and a contract is ambiguous only when the words used to express the intention of the parties are insufficient in that the contract may be read to reach more than one meaning. See Kennedy & Mitchell, Inc. v. Anadarko Prod. Co., 754 P.2d 803, 806 (Kan. 1988). We agree with the district court's reading of the KMGA-Rosene Agreement. The Agreement is unambiguous, and contrary to Boyd Rosene's reading, it is not a requirements contract. As the contract is unambiguous, the district court properly refused to examine the parol evidence offered by Boyd Rosene in support of its interpretation. See Williams v. Safeway Stores, Inc., 424 P.2d 541, 548 (Kan. 1967).

4

Article II of the KMGA-Rosene Agreement governs the quantity of gas to be sold and delivered. Under ¶ 2.1, Boyd Rosene "agrees to sell and deliver quantities nominated by KMGA, and KMGA agrees to purchase and receive monthly, the monthly total of the daily quantities nominated, agreed to, and described in Exhibit A . . . ." Exhibit A, in turn, sets forth the "Estimated Minimum Day Requirement" and "Estimated Maximum [Day] Requirement." Language in ¶ 2.7(b) parallels ¶ 2.1's requirement, "Should KMGA fail on any day to nominate and receive at least the minimum day requirement as listed in Exhibit A" KMGA shall owe Boyd Rosene liquidated damages for "the difference between the minimum day requirement and the amounts actually nominated and received." There is no dispute that KMGA purchased the minimum quantities listed in Exhibit A.

While Winfield failed to purchase at least 75% of its requirements from KMGA as required by the City Agreement, Winfield made its required deficiency payment to KMGA. Nothing in the City Agreement imposed an obligation on Winfield to purchase its requirements from Boyd Rosene. Moreover, Boyd Rosene enjoys no rights under the City Agreement.[2] KMGA and Winfield had performed under the City Agreement for approximately two years of its three-year term before the execution of KMGA-Rosene Agreement. As established by their different terms and conditions, the KMGA-Rosene

_____

[2] Boyd Rosene states that it is not claiming any rights under the City Agreement. See Appellant's Combined Reply Brief and Response Brief to the Combined Answer Brief and Opening Brief of Appellee/Cross-Appellant KMGA, at 15.

Agreement is separate from the City Agreement and does not obligate Winfield to purchase its gas requirements from Boyd Rosene.

With respect to the remaining claims of Boyd Rosene, the district court correctly ruled that ¶ 2.7(d) of the KMGA-Rosene Agreement sets forth the sole remedies for non-performance of the contract, regardless of whether a party's claims are based on contract or tort. Because ¶ 2.7(b) only allows Boyd Rosene to be made whole for KMGA's failure to purchase "at least the minimum day requirement as listed in Exhibit A," and because KMGA purchased those minimum quantities, Boyd Rosene is not entitled to collect damages on its remaining claims.

In summary, the KMGA-Rosene Agreement unambiguously required KMGA to purchase from Boyd Rosene the minimum daily requirements set forth in Exhibit A to the contract, and KMGA purchased those quantities. Thus, the Agreement was not breached. Moreover, the KMGA-Rosene Agreement is separate from the City Agreement and does not obligate Winfield to purchase its gas requirements from Boyd Rosene. Lastly, Boyd Rosene is not entitled to recover damages on its extra-contractual claims under the liquidated damages clause of the KMGA-Rosene Agreement. Thus, we affirm the district court's judgment on all of Boyd Rosene's claims.

On cross-appeal, KMGA and Winfield appeal the district court's denial of their request for attorneys' fees. They also seek attorneys' fees for this appeal under Oklahoma

law.  In its judgment filed August 14, 1995, the district court ruled, "Each party shall pay [its] respective attorney's fees."

We review de novo the choice of law issue raised on this cross-appeal.  See Olcott v. Delaware Flood Co., 76 F.3d 1538, 1544 (10th Cir. 1996).  Likewise, we review de novo any statutory interpretation or legal analysis underlying the district court's decision concerning attorneys' fees.  See Daleske v. Fairfield Communities, Inc., 17 F.3d 321, 323 (10th Cir. 1994).

KMGA and Winfield acknowledge that the choice of law rule announced in our decision in Bill's Coal Co., Inc. v. Board of Public Utilities, 887 F.2d 242, 246 (10th Cir. 1989), would result in the application of Kansas law, under which they would not be entitled to attorneys' fees.  Thus, KMGA and Winfield urge us to overrule Bill's Coal and apply Oklahoma's choice of law rules.  They contend its choice of law rules would result in the application of the Oklahoma attorneys' fee statute, Okla. Stat. Ann. tit. 12, § 936 (West 1988), and an award of attorneys' fees at the trial and appellate levels.  KMGA and Winfield rely on decisions of the U.S. Supreme Court handed down before Bill's Coal and decisions of this court handed down after Bill's Coal.  See, e.g., Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3 (1975) (per curiam); Griffin v. McCoach, 313 U.S. 498, 503 (1941); Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496-97 (1941); TPLC, Inc. v. United Nat'l Ins. Co., 44 F.3d 1484, 1490-91 (10th Cir. 1995); Rocky Mountain

Helicopters, Inc. v. Bell Helicopter Textron, Inc., 24 F.3d 125, 128 (10th Cir. 1994); Tucker v. R.A. Hanson Co., Inc., 956 F.2d 215, 217-18 (10th Cir. 1992).

One panel of this court is bound by the precedent of an earlier panel absent en banc reconsideration or a superseding contrary decision of the U.S. Supreme Court. LeFever v. Commissioner, 100 F.3d 778, 787 (10th Cir. 1996). Thus, we are bound by Bill's Coal, and affirm the district court's denial of attorneys' fees on this basis. Cf. Oklahoma Fixture Co. v. ASK Computer Sys., Inc., 45 F.3d 380, 380-81 n.1 (10th Cir. 1995) (noting identical issue with Bill's Coal). Similarly, we deny the request of KMGA and Winfield for appellate attorneys' fees, also premised on Oklahoma law, on this basis. Should any party desire us to reconsider Bill's Coal, the party should file a petition for rehearing and suggestion for rehearing en banc in accordance with Fed. R. App. P. 35 and 10th Cir. R. 35.1-35.7.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

8